UNITED STATES of America, Appellee,

v.

Jermaine BONEY, Appellant.

No. 94–3149.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 7, 1995.

Decided Oct. 20, 1995.

Barbara McDowell, appointed by the court, argued the cause, for appellant. With her on

the briefs was James E. Anklam, Washington, DC.

Matthew G. Olsen, Assistant United States Attorney, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., United States Attorney, John R. Fisher and Roy W. McLeese, III, Assistant United States Attorneys, Washington, DC.

Before: EDWARDS, Chief Judge, SENTELLE and TATEL, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

In 1990, defendant-appellant Jermaine Boney was convicted of two narcotics offenses. After the trial, it was discovered that the foreman of Boney's jury, "Mr. J," had previously been convicted for grand theft in California. Such a conviction would have disqualified Mr. J from serving on the jury,[1] but he lied on his juror qualification form, and did not reveal his prior felony at *voir dire*. Boney appealed his conviction, arguing, *inter alia*, that the presence of a felon on the jury tainted the trial and deprived him of his Sixth Amendment rights. A panel of this court affirmed appellant's conviction on all grounds except the juror-bias claim and remanded the case to the District Court to hold an evidentiary hearing to determine whether "actual bias" existed so as to justify granting a new trial. *United States v. Boney*, 977 F.2d 624, 634–35 (D.C.Cir.1992) (*"Boney I"*).

On remand, after reviewing questions previously submitted by counsel for both sides, the District Court held a hearing at which the judge examined the felon-juror. The court, however, asked the juror only two, overly general, questions regarding bias, and refused to ask several more probing inquiries submitted by Boney's counsel. The District Court subsequently ruled that the juror's failure to disclose his felon status did not result in actual bias to the defendant, and therefore refused to grant appellant's motion for a new trial. In light of the specific facts of this case, we hold that the court's inquiry was insufficient to assess the potential bias of

---

1. Under 28 U.S.C. § 1865(b)(5) (1988), a person shall not be qualified to serve on grand or petit juries in the district court if such person "has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored."

the juror. Accordingly, we remand for a second evidentiary hearing.

## I. BACKGROUND

This appeal arises from Boney's conviction, following a jury trial, for both distribution and possession with the intent to distribute more than five grams of cocaine pursuant to 21 U.S.C. § 841(a) (1988).[2] After the verdict had been returned, counsel for one of Boney's co-defendants received a tip that the jury foreman was a convicted felon. An investigation by the prosecutor confirmed that Mr. J had been convicted of grand theft and taking a vehicle without consent in California. Based on this information, defendants moved for a new trial, claiming that the felon's presence on the jury had violated their Sixth Amendment rights. The District Court denied the motion, and defendants appealed.

On appeal, this court held that the Sixth Amendment does not absolutely bar felon-jurors. *Boney I*, 977 F.2d at 633. Rather, the appropriate remedy for an allegation of juror bias is to hold an evidentiary hearing in order to determine whether the juror's failure to disclose his felon status resulted in "actual bias" to the defendant. *Id.* at 634–35. The panel therefore remanded the case to the District Court with instructions to conduct such a hearing.

On remand, the District Court contacted Mr. J, who informed the court that he would invoke his Fifth Amendment privilege against self-incrimination if called to testify at an evidentiary hearing. On the Government's motion, the District Court granted Mr. J statutory immunity. The trial court also decided that counsel would not be permitted to examine the witnesses directly, and instead invited the parties to submit proposed questions to be asked by the judge.

A hearing took place on June 27, 1994. The court first questioned Jury Administrator Jeanine Howard. She testified that, on his Juror Qualification Questionnaire, Mr. J had responded "No" to question six, which asked whether he had ever been convicted of a state or federal crime for which punishment could have been more than one year in prison. Mr. J also responded "Yes" to question seven, which asked whether his civil rights had been restored. These answers were inconsistent because question seven states that it should be answered only if the answer to question six is "yes." Howard testified that, because of this inconsistency, a Jury Office employee contacted Mr. J by telephone to clarify his answers. According to the employee's notation, Mr. J explained that he had mistakenly answered "Yes" to question seven, thus reaffirming that he had never been convicted of a felony and that he had never lost his civil right to serve on a jury. Tr. of Hearing (June 27, 1994) at 5–7, *reprinted in* Record Excerpts ("R.E.") 65–67.

The court next questioned Mr. J himself, who confirmed that he had pleaded *nolo contendere* to a charge of grand larceny in San Francisco in 1985. Mr. J stated that he had served nine months of a one-year sentence, followed by a probationary period of what "may have been" five years. His civil rights were not restored following his felony conviction. *Id.* at 11–12, *reprinted in* R.E. 71–72.

Mr. J admitted that his answer to question six regarding prior felony convictions was false. He claimed he "was thinking only as a juror in the District of Columbia and not in terms of San Francisco." *Id.* at 13, *reprinted in* R.E. 73. He stated that he answered question seven regarding his civil rights affirmatively because he believed that since his probation had ended, "whatever civil rights needed to be restored may have been restored as of that time." *Id.* at 14, *reprinted in* R.E. 74. Mr. J did not recall a telephone conversation with the Jury Office about his questionnaire responses.

The District Court then questioned Mr. J about his failure during *voir dire* to respond when asked whether he had ever been charged with or convicted of a crime. Mr. J explained:

---

2. One co-defendant, Jeffrey Marks, was acquitted on both counts, and another, Donald Holloman, was found guilty of distribution, but not posses-

sion. Holloman was a co-appellant on the first appeal to this court, but is not a party to the current proceeding.

Quite frankly, at this point I'm not quite sure of what was going through my head as to why I didn't respond to it.

What I can say in general is once you're charged with a felony and you come out of incarceration, one of the things you condition yourself to do in order to gain employment or get back into mainstream society is deny that you ever served time or to lie about it or to ignore the question, that is, whatever you need to do to gain employment or get in the work force—to get ahead, get back into the system.

I know at that time, that was a part of me going through in order to gain employment, get back on my feet. I learned either to ignore the question or to lie about the question. And, quite frankly, only within the last four years have I gotten to the point where I am pretty much up front about the fact that I'm an ex-offender.

But that's only because I'm secure in my place of employment and my employer knows I am an ex-offender.

I guess I'm saying that because I probably just consciously or unconsciously blocked the question.

*Id.* at 15–16, *reprinted in* R.E. 75–76.

Mr. J further testified that he had never seen or encountered any of the defendants prior to his jury service. The court asked him: "[W]as there anything about any of the defendants ... that caused you to want to serve or want not to serve as a juror in the case?" Mr. J answered, "No, not about any of them, no." *Id.* at 16, *reprinted in* R.E. 76. When asked whether there was "anything else about this case, its nature, or anything about it at all" that caused him to want to serve, Mr. J responded:

There was nothing specific about the case in and of itself ...; but I think there was probably a desire in terms of my upbring-

ing of being able to serve as a juror as all Americans would like to be able to vote or serve on a jury. From that point of view, yes, but not anything specific about the case itself, no.

*Id.* at 16–17, *reprinted in* R.E. 76–77.

Finally, Mr. J was asked: "Did you approach your participation as a juror in this case with any sort of bias against any of the three defendants in the case?" to which he responded, "I did not." *Id.* at 17, *reprinted in* R.E. 77.

The court refused to ask a number of questions that Boney's counsel had proposed on the ground that these questions were barred by Federal Rule of Evidence 606(b), which generally precludes jurors from testifying about their "mental processes in connection" with deliberations.[3] Some of the proposed questions sought to elicit information about Mr. J's comments to other jurors concerning his own experience with the criminal justice system:

18. Did you disclose your criminal conviction(s) to any of your fellow jurors? If so, when?

19. During your discussions with your fellow jurors, did you disclose any information (for example, information about cocaine) that you acquired as a result of your criminal prosecution and sentence? If so, what information did you disclose?

20. During your discussions with your fellow jurors, did you disclose any attitudes (for example, attitudes about drug defendants) that you acquired as a result of your criminal prosecution and sentence? If so, what attitudes did you disclose?

Def.'s Proposed Questions at 4, *reprinted in* R.E. 53 (footnote omitted).

---

3. Rule 606(b) provides:
   Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that

a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.
FED.R.EVID. 606(b).

The court also refused to ask several questions that were designed to elicit information about possible biases relating to Mr. J's felon status:

21. In the course of your service as a juror, did you want to be helpful to the government?

22. Did your experiences as a convicted felon or as a criminal defendant or as an arrestee affect your votes in the jury deliberation in this case? If so, how?

23. Was one of your reasons for voting to convict Mr. Boney to keep anyone associated with the case from suspecting that you were a felon yourself?

24. Was there any reason, apart from the testimony and other evidence introduced at trial, why you voted to convict Mr. Boney?

*Id.* at 4–5, *reprinted in* R.E. 53–54.

In addition, despite Boney's request, the court failed to send a questionnaire to the other members of the jury. Tr. at 25–26, *reprinted in* R.E. 85–86.

On August 18, 1994, the District Court issued an order finding that Mr. J's failure to "disclose his felon status did not result in actual bias to the defendants." *United States v. Boney,* Crim.Action No. 89–381, slip op. at 2 (D.D.C. Aug. 18, 1994), *reprinted in* R.E. 2. Accordingly, the court denied Boney's motion for a new trial. In the same order, the court denied appellant's motion for reconsideration of the decision not to ask several of Boney's proposed questions. The court determined that although Federal Rule of Evidence 606(b) permits inquiry into whether extraneous prejudicial information was brought to the jury's attention, such extraneous information "does not include information about a juror's subjective beliefs or status as a felon." *Id.* at 3, *reprinted in* R.E. 3. This appeal followed.

## II. ANALYSIS

■ In remanding the case initially, this court expressed strong concerns about the possible existence of bias and the need for an evidentiary hearing:

We do not now hold that any false statement or deliberate concealment by a juror necessitates an evidentiary hearing. But we believe that a juror's refusal to admit his felony status is particularly troublesome. Unlike some information sought in *voir dire,* a question about felon status would strike the average juror as extremely serious and sensitive. Lying about a factor as important (and as easy to verify through public records) as felon status raises at least the inference that the juror had an undue desire to participate in a specific case, perhaps because of partiality.

*Boney I,* 977 F.2d at 634. Given that mandate, the District Court was obligated to conduct a searching inquiry concerning possible prejudices related to his conviction that Mr. J may have carried with him into the jury deliberations. Although trial judges are generally accorded broad discretion in their conduct of juror-bias hearings, that discretion is " 'not unlimited.' " *Neron v. Tierney,* 841 F.2d 1197, 1201 (1st Cir.) (quoting *United States v. Corbin,* 590 F.2d 398, 400 (1st Cir.1979)), *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). For example, the Supreme Court has assumed that such proceedings will at least provide the defendant an "opportunity to prove actual bias." *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982). Similarly, in *United States v. Butler,* 822 F.2d 1191 (D.C.Cir.1987), this court ruled that, although juror-bias hearings need not be conducted as full evidentiary proceedings, the inquiries put to the juror must be "sufficiently detailed to permit the judge to determine whether any prejudice is likely to [have resulted]." *Id.* at 1196.

■ Because "sufficiency" is a dynamic concept, and techniques for achieving a sufficiently detailed inquiry may vary, our review of juror-bias hearings is necessarily case-specific. *Neron,* 841 F.2d at 1201. The outer limits on the District Court's discretion, therefore, cannot be measured against a fixed set of procedural requirements. Accordingly, our review is limited to determining whether, given the facts before us, the hearing was adequate to reveal any potential bias that might have tainted the verdict.

■ In this case, several factors pointed to the need for a more serious and thorough inquiry. First, Mr. J undisputedly lied in concealing a felony conviction that, had he told the truth, would have guaranteed his removal from the panel. Second, the appellate panel found that this particular lie raised "at least the inference that the juror had an undue desire to participate in a specific case, perhaps because of partiality." *Boney I*, 977 F.2d at 634. And third, the hearing occurred after the verdict had been rendered, thus removing the usual concern that the interrogation itself might have an effect on the outcome of the trial. *See, e.g., United States v. Williams*, 822 F.2d 1174, 1189 (D.C.Cir. 1987) (expressing concern that individual questioning of jurors "conceivably could jeopardize the accused's rights, for [such questioning during trial] could cause the jurors polled to attach undue significance to the incident").

Given these particular circumstances, we find the District Court's inquiry to be insufficient and an abuse of discretion. The court asked Mr. J only two questions relating to bias: whether anything about the defendants or the case in general caused Mr. J to want to serve as a juror, and whether he approached his participation as a juror with any bias against the defendants. Such a limited inquiry virtually assured that the hearing would fail to discover any possible prejudice. Indeed, the court's questions permitted Mr. J to decide for himself the ultimate issue of whether he was biased rather than seeking information that would permit the court to make its own determination. *See United States v. Rhodes*, 556 F.2d 599, 601 (1st Cir.1977) (finding that court's "altogether too telescopic" questions as to jurors' exposure to extraneous materials "let the jurors decide for themselves the ultimate question whether what they had learned had prejudiced them"). Certainly, no skilled attorney conducting a cross-examination to uncover bias would be satisfied with such a cursory approach. *Cf.* FRANCIS L. WELLMAN, THE ART OF CROSS EXAMINATION 38 (1978) (noting that witness errors "should be drawn out often by inference rather than by direct question, because all witnesses have a dread of self-contradiction").

The District Court also took an overly narrow view of the kinds of bias to be examined at the hearing. The questions focused only on possible prejudice against the defendants specifically, and the court refused to probe whether Mr. J might have been motivated by a more general desire to help the government, or whether either his efforts to conceal his felon status or his experiences as a criminal defendant might have influenced him. "Actual bias" can include more than just personal animus against the defendants. After all, it is not unreasonable to believe that a convicted felon might want to help the Government and prove himself a good citizen. In fact, Mr. J's comment that he wanted to serve as a juror like "all Americans" indicates at least the possibility that he was prompted by a desire to prove his patriotism as part of his efforts to rejoin society and put his criminal past behind him. Similarly, he might well have believed that voting to convict would more effectively hide his felon status. The trial court erred in refusing to allow an examination that would reach these issues.

Because a person may not recognize, or admit to, certain subtle biases, it is often only through more specific questions that a person's prejudices are revealed. This rather rudimentary observation underlies our entire adversary system, where cross-examination is considered essential in order to test witnesses for concealed bias. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (observing that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested" and noting that a witness' credibility can be attacked "by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives"). Even at *voir dire*, when courts routinely ask prospective jurors whether they or any members of their families have ever been the victim of, a witness to, or charged with a crime, the question is intended to locate prejudices that might be unknown to the jurors themselves. The District Court's failure to search, even briefly, for such hidden prejudices rendered the evidentiary hearing a useless exercise that ig-

nored the serious concerns about possible bias expressed by this court in *Boney I*.

■ While the most important flaw in the evidentiary hearing was the failure to ask more probing questions, we believe the District Court also erred in not permitting Boney's counsel to cross-examine the juror. Although we recognize that in some cases questioning by counsel may be inappropriate because "jurors should not be subjected to undue impositions," *United States v. Boylan*, 898 F.2d 230, 258 (1st Cir.), *cert. denied*, 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990), in this instance there is no apparent reason why counsel for both parties should not be permitted to question Mr. J directly. The proceedings are much more likely to uncover Mr. J's possible biases if the questions are not filtered through the judge, and, given the specific facts of this case, it is unlikely that such an examination will compromise the confidentiality of jury deliberations. In any event, the court would, of course, still retain the authority to rule on objections at the hearing and to strike specific questions deemed to be inappropriate.

■ Boney also claims that the trial court erred by not querying Mr. J on what happened during jury deliberations, and by not questioning the other jurors on the panel regarding their contacts with Mr. J. The judge refused to ask such questions apparently on the ground that the inquiry would require the jurors to testify regarding the validity of their verdict, in violation of Federal Rule of Evidence 606(b). Appellant contends that the Rule permits questions regarding "extraneous prejudicial information" and that if Mr. J disclosed any information related to his felony conviction in the jury room, such disclosures would fall within that exception. In light of the fact that Mr. J had no right whatsoever even to serve on the jury, *see* 28 U.S.C. § 1865(b)(5) (1988), it does not seem inappropriate to inquire of him whether his felon status ever came up during jury deliberations, and, if so, the circumstances surrounding that disclosure. Although it is expected that jurors will bring their various life experiences into the jury room, Mr. J's experience as a felon is the one matter that should not have been before the jury at all because no ex-felons should have been on the panel. Therefore, any discussion of Mr. J's felon status during deliberations would surely seem to be "extraneous," and possibly "prejudicial" as well.

While we hold that Rule 606(b) does not prohibit further questioning of Mr. J himself, we do not reach the issue of whether the judge should have questioned the other jurors on the panel. Based on information that might be elicited from a more thorough inquiry of Mr. J, the judge will be better able to assess the value of questioning the other jurors and to determine whether such questions would fall within the "extraneous prejudicial information" exception to Rule 606(b).

### III. CONCLUSION

For the foregoing reasons, we remand this case to the District Court with instructions to conduct a second evidentiary hearing into Mr. J's possible biases. At this hearing, Mr. J should face a more probing inquiry in order to elicit any prejudice related to his felon status that might have affected the jury's deliberations. In addition, counsel for both sides should be permitted to conduct the direct and cross-examination of the juror. Following the hearing, the District Court may decide whether to permit questioning of the other jurors on Boney's panel.

*So ordered.*