**UNITED STATES of America**

v.

**Jermaine BONEY, Defendant.**

**No. 89–381 EGS.**

United States District Court,
District of Columbia.

Feb. 18, 2000.

Joan Draper, U.S. Attorney's Office, Washington, DC, for U.S.

James Edward Anklam, Bevin Marie Bauman Newman, Jones, Day, Reavis & Pogue, Washington, DC, for defendant.

## MEMORANDUM OPINION

SULLIVAN, District Judge.

### INTRODUCTION

This matter is before the Court on remand from the D.C. Circuit pursuant to its decisions in *United States v. Boney*, 977 F.2d 624 (D.C.Cir.1992), (*"Boney I"*), and *United States v. Boney*, 68 F.3d 497 (D.C.Cir.1995), (*"Boney II"*). In *Boney II* the Circuit Court directed the District Court to conduct a second post-trial evidentiary hearing to determine whether defendant was prejudiced by the jury foreman's failure to disclose his felon status during defendant's trial. The original judge who had presided over the trial and remand after *Boney I*, recused himself after the second remand and the case was randomly reassigned to Judge Emmet G. Sullivan by the U.S. District Court's Calendar Committee pursuant to Local Rule 403(a).

In 1991 defendant Jermaine Boney was convicted of distribution of cocaine and possession with intent to distribute more than five grams of cocaine. After the jury returned the verdict but prior to sentencing, the prosecutor confirmed a tip from counsel for co-defendant Donald Holloman that the foreman of the jury ("the Juror") had failed to disclose a grand larceny conviction in San Francisco, California, on the jury questionnaire form and during voir dire.

On appeal, defendant maintained that the presence of a felon on the jury violated his Sixth Amendment right to an impartial jury. The Circuit Court affirmed defendant's conviction on all grounds with the exception of the juror-bias claim and "remand[ed the] case for the District Court to hold an evidentiary hearing to determine whether the [J]uror's failure to disclose his felon status resulted in actual bias to [defendant]." *Boney I*, 977 F.2d at 635. On remand, the District Court conducted a post-trial evidentiary hearing and ruled that the Juror's failure to disclose his felon status did not result in actual bias to defendant. Thus, the District Court denied defendant's motion for a new trial. *See Boney II*, 68 F.3d at 501. In *Boney II* the Circuit Court held that the District Court's evidentiary hearing was insufficient to determine the potential biases of the Juror and remanded the case for the District Court to hold a second post-trial evidentiary hearing. *Id.* at 503. At the second hearing the government argued that defendant was not unfairly prejudiced by the Juror's presence and that the Juror's prior criminal history did not impact the jury's deliberations. Defendant reasserted his claim of juror bias.

Upon consideration of the testimony, evidence, and arguments of counsel presented during defendant's second evidentiary hearing, this Court concludes that defendant has not clearly demonstrated that the Juror's lack of qualifications presented bias or prejudice, actual or inferred, "affecting the [J]uror's impartiality and impacting the fairness of the trial." *United States v. Humphreys*, 982 F.2d 254, 261 (8th Cir.1992). Accordingly, defendant was not deprived of his Sixth Amendment right to an impartial jury, and defendant's motion for a new trial is **DENIED**.

### I. BACKGROUND

In 1991 defendant Jermaine Boney and co-defendant Donald Holloman were convicted of drug trafficking pursuant to 21 U.S.C. § 841(1). After being tipped that the jury foreman was a felon, Boney and Holloman appealed their convictions on grounds of jury bias. On appeal, the Circuit Court affirmed defendants' convictions but remanded the case to the district court to hold an "evidentiary hearing to determine whether [the J]uror's failure to disclose his felon status resulted in actual bias against the [defendants]." *Boney I*, 977 F.2d at 637.

On remand, counsel for both parties submitted proposed questions to the Court that were intended to expose evidence of actual bias to defendant. The District

Court then held a hearing but posed only those questions to the Juror that the Court found to be relevant and admissible under Fed.R.Evid. 606.[1]

The District Court concluded that the Juror's failure to "disclose his felon status did not result in actual bias to the defendants." *Boney II*, 68 F.3d at 501 (citation omitted). The District Court then denied Boney's motion for a new trial and his motion for reconsideration of the decision not to ask several of his proposed questions. Boney appealed those rulings to the Circuit Court.[2]

On appeal, the Circuit Court held that: (1) at the hearing to determine whether defendant was biased by the Juror's denial of his felon status, the District Court's questions to the Juror were insufficient to reveal any prejudice that might have affected jury deliberations; (2) defense counsel was entitled to cross-examine the Juror at the evidentiary hearing; and (3) the trial court could inquire as to whether the Juror's felon status was mentioned during jury deliberations and what circumstances might have surrounded such a disclosure, without violating Fed.R.Evid. 606(b). *See id.* at 502–03.

Following the second remand, the original trial judge recused himself from further proceedings, and now this matter and the underlying issues come before this Court on defendant's renewed motion for a new trial. After receiving briefs and proposed questions from counsel for the parties, the Court conducted a second evidentiary hearing.

Testimony at the evidentiary hearing revealed that the Juror had pleaded *nolo contendere* to a charge of grand larceny in San Francisco in 1985 and served nine months of a one-year sentence, which was followed by a term of probation. The Juror was still on probation when he completed the Juror Qualification Questionnaire but omitted this conviction. The Juror vaguely recalled mentioning his felon status to an individual in the Jury Office on the day of trial but remembered only being asked to return to the jury room. The Juror failed to disclose his felony conviction during voir dire and was later impaneled as a member of defendants' jury.

## II. DISCUSSION

The Court begins its analysis by discussing both the manner in which it conducted the second post-trial evidentiary hearing and the sufficiency of its inquiry. The Court will then examine the Juror's testimony and consider its relevance to the establishment of actual bias. Next, the Court will consider what evidence exists, if any, from which bias against defendant might be inferred. Of particular concern are questions raised by defendant regarding the Juror's credibility and his prior history of untruthfulness on the subject of his felony conviction. The Court will then address defendant's renewed request to poll the jury panel in defendant's criminal trial before finally determining if defendant's Sixth Amendment rights were prejudiced sufficiently to warrant a new trial.

### A. RIGHT TO A NEW TRIAL

Defendant contends that the Sixth Amendment guarantee of an impartial jury

---

1. Fed.R.Evid. 606 provides, in pertinent part, that: "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, *except that a juror may testify on the question of whether extraneous prejudicial information was im-* properly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Fed.R.Evid. 606(b) (emphasis added).

2. Holloman was a co-appellant on the first appeal to the Circuit Court, *see Boney I*, 977 F.2d 624, but was not a party to the second appeal, *see Boney II*, 68 F.3d at 499 n. 2, or to the present proceeding before this Court.

requires a new trial. Although the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed," it is well established that the "Sixth Amendment right to an impartial jury does not require an *absolute bar* on felon-jurors." *Boney I*, 977 F.2d at 633. The result is that "[t]he Sixth Amendment guarantee of an impartial trial does not mandate a *per se* invalidation of every conviction reached by a jury that included a felon." *Id.* (citing *United States v. Uribe*, 890 F.2d 554, 562 (1st Cir.1989)). In fact, "[a] *per se* rule would be appropriate ... only if one could reasonably conclude that felons are always biased against one party or another. But felon status, alone, does not necessarily imply bias." *Id.*

The Court in *Boney I* also noted that "a *per se* rule requiring a new trial whenever a felon serves on a jury is inconsistent with [the] hostility to unnecessary new trials" expressed in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553–54, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). *See* 977 F.2d at 633. Moreover, such a rule runs contrary to the axiom that " 'a defendant is entitled to a fair trial but not a perfect one.' " *Id.* (quoting *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953)). Therefore, this Court cannot determine a Sixth Amendment violation or grant defendant's motion for a new trial based simply upon the Juror's felon status. Rather, the Court must determine if the presence and participation of a felon, both on the jury panel and as jury foreman, were sufficient to prejudice the jury's determination of guilt.

## B. *POST–TRIAL HEARING*

The Supreme Court has not directly addressed the question of "whether a hearing is *required* when it is revealed after trial that a juror had concealed relevant information," *Boney I*, 977 F.2d at 634, such as felon status, but the Court has noted that allegations of juror partiality are best remedied by a "hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). In remanding the case to this Court, the *Boney II* Court described in detail the type of inquiry necessary to expose potential juror bias: "[A]lthough juror-bias hearings need not be conducted as full evidentiary proceedings, the inquiries put to the juror must be 'sufficiently detailed to permit the judge to determine whether any prejudice is likely to [have resulted].' " 68 F.3d at 501 (citing *United States v. Butler*, 822 F.2d 1191, 1196 (D.C.Cir. 1987)).

The *Boney II* Court also took notice of a number of specific questions that the District Court excluded from defendants' first post-trial evidentiary hearing,[3] finding them necessary "to discover any possible prejudice." *Id.* at 502. During the second evidentiary hearing, this Court asked the questions that were previously excluded.[4]

The Circuit Court also concluded that the District Court not only failed "to ask more probing questions" but also "erred in not permitting Boney's counsel to cross-examine the juror." *Id.* at 503. In contrast, defendant's second evidentiary

---

**3.** These questions included:

  #18  "Did you disclose your criminal conviction(s) to any of your fellow jurors? If so, when?"

  #19  "During your discussions with your fellow jurors, did you disclose any information ... that you acquired as a result of your criminal prosecution and sentence?"

  #22  "Did your experiences as a convicted felon or as a criminal defendant or as an arrestee affect your votes in the jury deliberations in this case? If so, how?" *Boney II*, 68 F.3d at 500–01.

**4.** Some of the questions were designed to elicit information about any discussion of the Juror's "experience with the criminal justice system" as well as "possible biases relating to [the Juror's] felon status." *Boney II*, 68 F.3d at 500–01.

hearing included direct examination, cross-examination, and re-direct examination—all conducted by counsel—as well as additional questioning by the Court. The Court granted defense counsel considerable latitude in her inquiries, which covered: (1) the Juror's experience in the criminal justice system, including arrest, trial, and incarceration; (2) his efforts to re-assimilate once released on probation; (3) his attempts to seek employment; (4) his personal beliefs about drugs; (5) his explanations for failing to disclose his felony conviction on the jury questionnaire and during voir dire; and, most importantly, (6) his conduct during jury deliberations. This cross-examination was extensive and included approximately eighty-five questions, which clearly exceeded the scope of defendant's first evidentiary hearing. *See id.* at 498.

As a result of these efforts, the Court has a complete and fully developed record upon which to determine actual bias by the Juror.

## C. *JUROR BIAS*

█ As a general principle, post-trial juror-bias hearings are intended to provide the defendant, or moving party, with the "opportunity to prove actual bias." *Boney II,* 68 F.3d at 501; *Boney I,* 977 F.2d at 634 (both citing *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)); *see also United States v. North,* 910 F.2d 843, 904 (D.C.Cir.1990)(citing *McDonough,* 464 U.S. at 556, 104 S.Ct. 845)("Read along with the concurrences of five Justices, *McDonough* suggests that *an aggrieved party* must show that the juror's correct response at voir dire would have demonstrated actual bias.") (emphasis added), *cert. denied,* 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991). In *United States v. Williams–Davis,* 90 F.3d 490 (D.C.Cir.1996), the D.C. Circuit applied the standard for establishing juror impartiality

to the context of the voir dire process. The Court noted that:

> For reversal because of a juror's failure to disclose information at voir dire, the Supreme Court requires the complaining party to show that the juror "failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial."

90 F.3d at 503 (citing *McDonough,* 464 U.S. at 556, 104 S.Ct. 845 (plurality)).[5]

### 1. *Actual Bias*

█ The Circuit Court found the Juror's conduct and his refusal to admit his previous crime "particularly troublesome" and recognized that "[l]ying about a factor as important (and as easy to verify through public records) as felon status raises at least the inference that the [J]uror had an undue desire to participate in a specific case, perhaps because of partiality." *Boney I,* 977 F.2d at 634. Yet, as recently as 1996, the Circuit Court considered the issue of juror credibility in a very similar context and concluded that a district court's failure to credit a juror's testimony on certain issues related to voir dire did not constitute partiality or prejudice when any other showing of actual bias in jury deliberations was lacking. *See United States v. Williams–Davis,* 90 F.3d at 503.

In *Williams–Davis,* the Court noted its previous application of the *McDonough* standard in *United States v. North,* 910 F.2d at 903–904, observing that:

> [W]e upheld the trial court's finding that there was no actual bias, even though the trial court disbelieved the juror's post-trial "forgetfulness" explanation of her failure to reveal that several of her

5. "[T]o be awarded a new trial, a litigant should be required to demonstrate that the juror incorrectly responded to a material question on voir dire, and that, under the facts and circumstances surrounding a partic-

ular case, the juror was biased against the moving litigant." *McDonough,* 464 U.S. 548, 557–58, 104 S.Ct. 845, 78 L.Ed.2d 663 (Brennan, J., with Marshall, J., concurring).

brothers had been charged with criminal conduct.

90 F.3d at 503. Even if this Court did not credit the Juror's explanation as to why he omitted a California conviction from his District of Columbia jury questionnaire or his vague recollection of a conversation with the Jury Office regarding his probationary status, additional evidence would still be necessary to establish actual bias and to demonstrate prejudice to defendant's case.

Defendant claims that the Juror's grand larceny conviction (a crime of dishonesty), when combined with testimony that he lied about his conviction to take part in the jury selection process, to secure employment, and to "get ahead," constitutes sufficient evidence to determine actual bias. *See* 5/20/97 Tr. at 51. Yet final discretion as to the Juror's credibility and the existence of prejudice against defendant as a result of the Juror's presence and participation, rests clearly with the court conducting the relevant inquiry. As articulated by the Circuit Court in *Williams–Davis:*

> We think that where the court conducts an inquiry broad enough to lead it to a reasonable judgment that there has been no prejudice, on an assumption as to the facts favorable to defendants' claim, it has fulfilled its procedural as well as its substantive duty.

90 F.3d at 499.

The Court is troubled by the Juror's omissions, which were articulated in prior hearings and re-emphasized during defense counsel's cross-examination, including the Juror's failure to complete his jury questionnaire honestly and accurately and his failure to notify the trial court of his felony conviction during voir dire.

Defendant argues that the Juror is not trustworthy and that his testimony reflects a pattern of self-serving dishonesty. Defendant also characterizes the explanations given by the Juror for his conduct during the jury selection process as excuses, both contradictory and incredible, and particularly questions the Juror's claim that he notified the Jury Office about his felon status. Although the Juror asserts that he neither discussed his conviction nor referred to any prior experience with the criminal justice system during jury deliberations, defendant contends that these assertions cannot be believed and that the Court should discredit the Juror's testimony.

In contrast, the government maintains that, while the Juror has, by his own admission, lied about his felony conviction in the past, he did nothing to corrupt the fairness or impartiality of jury deliberations conducted in this defendant's criminal case. Government counsel also argues that the Juror's demeanor is critical to evaluating the truthfulness of his assertions of impartiality and stresses the Juror's cooperation in these post-trial proceedings.

■ Ultimately, the Court is persuaded that the Juror's testimony included no direct evidence of actual bias. Nor did the overall evidence regarding the Juror's prior criminal conviction, the Juror's failure to disclose this felony conviction to the trial court, and the Juror's history of concealing this conviction, constitute sufficient grounds for the court to *infer* the existence of actual bias and unfair prejudice in the jury deliberation process.[6]

During direct examination the Juror stated that he did not reveal his felony conviction to his fellow jurors, nor did he discuss any information or attitudes that he might have acquired as a result of his criminal prosecution and incarceration. *See* 5/20/97 Tr. at 9, 11–12; 28–30 (cross).

---

6. *See also McDonough,* 464 U.S. at 558, 104 S.Ct. 845 (Brennan, J., with Marshall, J., concurring) ("Because the bias of a juror will rarely be admitted by the juror himself...it necessarily must be inferred from surrounding facts and circumstances. Therefore, for a court to determine properly whether bias exists, it must consider at least two questions: are there any facts in the case suggesting that bias should be conclusively presumed; and, if not, is it more probable than not that. the juror was actually biased against the litigant.

Even with detailed questioning, defendant failed to demonstrate that any particular element of the Juror's criminal experience—arrest, trial, incarceration or probation—biased the Juror against defendant. *See id.* at 28–30. The only consistent motive offered by the Juror for not disqualifying himself as a potential juror was that he came of age during the Civil Rights movement and desired to exercise his right to serve on a jury. *See id.* at 41.

Ultimately, the Court finds that although the hearing records may demonstrate some minor inconsistencies between the Juror's testimony in 1994 and his recollection of events in 1997, the Juror's efforts to cooperate in these proceedings and his claims of impartiality in regards to defendant's trial appear to be genuine. The original trial judge reached a similar conclusion following his dialogue with the Juror in 1994:

> The Court found [the Juror] to be a very credible witness. Nothing in the record even hints that [the Juror's] motivation for not disclosing his felony status was related to actual bias towards the defendants. Nor was it related to any other aspect of the case.

*United States v. Boney,* Crim. A.89–381, 1994 WL 907463 (D.D.C. August 18, 1994).

Moreover, although the Court is still concerned by the Juror's history of untruthfulness, this concern is mitigated by the Court's observation of the witness and the Court's independent assessment of his demeanor and credibility at the second evidentiary hearing. The Court is further persuaded by the forthcoming manner in which the Juror answered questions concerning his experience in the criminal justice system and the instances in which he concealed his conviction to gain employment or, as in the case at hand, to have the privilege of sitting on a jury. In each instance, his participation included the protection of personal immunity. Arguably, he had no reason not to speak freely and truthfully about the events of seven years ago or about his prior history in the criminal justice system. In fact, the Juror was particularly candid in admissions concerning his deliberate efforts to "deny," "lie," or "ignore" questions about his felony status in the years following his release from prison. *See* 6/27/94 Tr. at 15–16; 5/20/97 Tr. at 45, 51.

Therefore, the Court is persuaded that the Juror would testify with equal frankness regarding any disclosures he may have made to other members of the jury. Moreover, if he believed himself to have been susceptible to any of the subtler biases drawn out during cross-examination, the Court is of the opinion that it is reasonable to assume that he would answer truthfully in that regard as well. Accordingly, the Court concludes that the Juror had no actual bias towards defendant.

## 2. Implied Bias

The Supreme Court has also indicated that in exceptional circumstances bias can be implied or presumed as a matter of law.[7] According to Justice O'Connor, such exceptional circumstances "might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Smith v. Phillips,* 455 U.S. at 222, 102 S.Ct. 940 (O'Connor, J., concurring) *See also McDonough,* 464 U.S. 548, 558, 104 S.Ct. 845, 78 L.Ed.2d 663 (Brennan, J., with Marshall, J., concurring) (noting that a court must determine whether factors indicate actual bias or, alternately, whether there are "any facts in the case suggesting that bias should be

Whether the juror answered a particular question on voir dire honestly or dishonestly, or whether an inaccurate answer was inadvertent or intentional, are simply factors to be considered in this latter determination of actual bias.").

7. Justice O'Connor concurred in *Smith v. Phillips,* noting that "I read the Court's opinion as not foreclosing the use of implied bias in appropriate situations, and, therefore, I concur." 455 U.S. at 224, 102 S.Ct. 940.

conclusively presumed") and at 556, 104 S.Ct. 845 (Blackmun, J., with Stevens, J. and O'Connor, J. concurring) noting that bias may be inferred in "exceptional circumstances."

Although, as here, "a juror's refusal to admit his felony status is particularly troublesome," *Boney I*, 977 F.3d at 634, this Court does not find that the circumstances surrounding this case are "exceptional" enough to imply bias as a matter of law.

## D. *POLLING OF THE JURY PANEL*

 Finally, the Court must consider the necessity and appropriateness of polling the original jury panel seated for defendant's criminal trial. This polling request, first made by defendant in anticipation of the original trial judge's evidentiary hearing, is noted by the Circuit Court's opinion in *Boney II*: "[D]espite [defendant's] request, the court failed to send a questionnaire to the other members of the jury." 68 F.3d at 501 (referencing hearing transcript dated June 27, 1994 at 25–26).

Notwithstanding its observation, the Circuit Court does not take a position on the propriety of such a request or its permissibility under Fed.R.Evid. 606.[8] Instead, it recognizes the District Court's ability to evaluate this proposal following the completion of a more in-depth evidentiary inquiry:

> [W]e do not reach the issue of whether the judge should have questioned the other jurors on the panel. Based on information that might be elicited from a more thorough inquiry of [the Juror], the judge will be better able to assess the value of questioning the other jurors and to determine whether such questioning would fall within the 'extraneous prejudicial information' exception to Rule 606(b).

*Boney II*, 68 F.3d at 503.

This Court has independently determined that the Juror's testimony during the remand hearing was credible and that the Juror had no bias, actual or otherwise, towards the defendant. Accordingly, having reached those conclusions, the Court is indeed "reluctant to 'haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences.'" *United States v. Ianniello*, 866 F.2d 540, 543 (2nd Cir.1989) (citation omitted).

Therefore, defendant's polling request is **DENIED.**

## *ORDER*

For the reasons set forth in the accompanying Memorandum Opinion & Order, it is hereby

**ORDERED** that defendant's motion for a new trial is **DENIED.**