FILED
United States Court of Appeals
Tenth Circuit

**March 23, 2009**

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

KERRY DEAN BENALLY,

Defendant - Appellee.

No. 08-4009
(D.Ct. No. 07-CR-00256-DAK-1)

**ORDER**

Before **HENRY**, Chief Judge, **TACHA, KELLY**, **BRISCOE**, **LUCERO,**
**MURPHY**, **HARTZ, O'BRIEN, MCCONNELL, TYMKOVICH, GORSUCH**,
and **HOLMES**, Circuit Judges.

This matter is before the court on Kerry Dean Benally's petition for

rehearing en banc. The original panel considered the petition. Any implicit

request for panel rehearing is denied.

The en banc request was transmitted to all of the judges of the court who

are in regular active service. A poll was called and a majority of the active

judges voted to deny rehearing en banc. Chief Judge Henry, Judge Briscoe, Judge

Lucero, and Judge Murphy would grant the petition.

Entered for the Court,

ELISABETH A. SHUMAKER
Clerk of Court

No. 08-4009, <u>United States v. Benally</u>

**BRISCOE**, Circuit Judge, joined by **LUCERO**, Circuit Judge, in Parts II and III, dissenting from denial of rehearing en banc:

At issue in this case is whether a Native American defendant, convicted by a jury whose foreman and another juror knowingly concealed racist views and stereotypes of Native Americans during voir dire and then later openly espoused those views during deliberations, can properly rely on testimony from other jurors in order to establish the existence of structural error, i.e., a violation of his Sixth Amendment right to an impartial jury, and, consequently, his right to a new trial.

Mr. Benally, a Native American, was charged with forcibly assaulting a Bureau of Indian Affairs officer with a dangerous weapon, in violation of 18 U.S.C. § 111(b), a crime that carries a potential sentence of up to twenty years' imprisonment. During voir dire, the district court, at Mr. Benally's request, asked the potential jurors if they had ever had any negative experiences with Native Americans and, if so, whether those experiences would impact their evaluation of the facts of the case. None of the jurors answered affirmatively to these questions. The case proceeded to trial and the jury found Mr. Benally guilty.

The day after the verdict was announced, one juror ("Juror KC") came forward of her own volition and alleged that two of the jurors, including the foreman, had made racist statements about Native Americans during deliberations. According to Juror KC, the foreman purportedly "told the other jurors that he used to live on or near an Indian Reservation, that '[w]hen Indians

get alcohol, they all get drunk,' and that when they get drunk, they get violent." 546 F.3d at 1231. Juror KC alleged that another juror purportedly "chimed in to say that she had also lived on or near a reservation" and "'agree[d] with the foreman's statement about Indians.'" Id. at 1231-32. Lastly, Juror KC alleged that a discussion occurred "in which some jurors discussed the need to 'send a message back to the reservation . . . .'" Id. at 1232. After obtaining an affidavit from Juror KC and another juror who confirmed that racially biased statements were made during deliberations, Mr. Benally moved for a new trial, arguing that his Sixth Amendment right to an impartial jury had been violated because some of the jurors had lied during voir dire about their racial bias. The district court found, on the basis of the affidavits submitted by Mr. Benally, that two of the jurors had, in fact, lied during voir dire "when they failed to reveal their past experiences with Native Americans and their preconception that all Native Americans get drunk and then violent." 546 F.3d at 1232. Accordingly, the district court granted Mr. Benally's motion for new trial. The government then appealed.

The panel holds, in reversing the district court's decision and reinstating Mr. Benally's conviction, that Rule 606(b) effectively prohibits "juror testimony of racial bias in jury deliberations of the kind alleged [to have occurred] in Mr. Benally's trial, and [that] the Sixth Amendment does not require an exception." Id. at 1231. I am of the firm view, however, that the panel's opinion

-2-

misinterprets Federal Rule of Evidence 606(b) and, in doing so, erects an improper and insurmountable barrier preventing Mr. Benally from enforcing his Sixth Amendment right to an impartial jury.

I

*"Inquiry into the validity of the verdict"*?

Rule 606(b), entitled "Inquiry into validity of verdict or indictment," provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Mr. Benally argued "that the testimony concerning racial bias f[ell] outside the ambit of . . . Rule [606(b)] because it [wa]s not being offered in connection with 'an inquiry into the validity of a verdict or indictment.'" 546 F.3d at 1235 (quoting Fed. R. Evid. 606(b)). But the panel rejected this position. According to the panel, "[a]lthough the immediate purpose of introducing the testimony may have been to show that the two jurors failed to answer honestly during voir dire, the sole point of this showing was to support a motion to vacate the verdict and

-3-

for a new trial. That is a challenge to the validity of the verdict." Id.

This reasoning, in my view, is erroneous. If, as Mr. Benally asserts, one or more jurors failed to honestly respond to the district court's questions during voir dire, then Mr. Benally would have established the existence of a structural defect in his trial, i.e., the deprivation of his Sixth Amendment right to an impartial jury. See Gray v. Mississippi, 481 U.S. 648, 668 (1987) ("because the impartiality of the adjudicator goes to the very integrity of the legal system, the Chapman harmless-error standard cannot apply"). And, it is indisputable that such a defect would have existed from the outset of his trial and would not be amenable to harmless error review. Thus, contrary to being an "inquiry into the validity of the verdict" rendered by the jury in his case, Mr. Benally's claim is more properly viewed as an inquiry into "the legitimacy of [the] pre-trial procedures," and, in turn, the constitutionality of the overall proceedings. 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence 2d § 6074 at 516 (2007).

I would note, in passing, that the panel's interpretation of Rule 606(b) in this regard conflicts with that of the Ninth and District of Columbia Circuits. See United States v. Henley, 238 F.3d 1111, 1121 (9th Cir. 2001) ("Where, as here, a juror has been asked direct questions about racial bias during voir dire, and has sworn that racial bias would play no part in his deliberations, evidence of that juror's alleged racial bias is indisputably admissible for the purpose of

determining whether the juror's responses were truthful."); United States v. Boney, 68 F.3d 497, 503 (D.C. Cir. 1995) (holding, where jury foreman lied on jury questionnaire as to whether he had ever been convicted of a felony, Rule 606(b) did not prohibit district court from conducting evidentiary hearing and questioning foreman).  Further, although the panel suggests its conclusion is consistent with the Third Circuit's decision in Williams v. Price, 343 F.3d 223 (3d Cir. 2003), that decision is distinguishable because it involved an appeal from the denial of a state prisoner's 28 U.S.C. § 2254 habeas petition, and decided only that Supreme Court precedent did not "clearly establish[] that it [wa]s unconstitutional for a state to apply a 'no impeachment' rule that d[id] not contain an exception for juror testimony about racial bias on the part of jurors."  Id. at 239.  In other words, the Third Circuit did not directly resolve the issue we now face.

II

*The "extraneous prejudicial information" exception*

Even if Mr. Benally's motion could be construed as an "inquiry into the validity of the verdict" reached in his case, I believe, for several reasons, that the panel opinion incorrectly concludes that the "extraneous prejudicial information" exception to Rule 606(b) does not encompass the racist statements made by the jury foreman and another juror during deliberations.

First, our prior decision in United States v. Humphrey, 208 F.3d 1190, 1199

(10th Cir. 2000), effectively construes the "extraneous prejudicial information" exception as encompassing statements made by jurors to each other regarding matters that were not part of the trial record. In Humphrey, we held that a district court, upon hearing rumors of improper juror discussion regarding a defendant's reputation, must investigate sufficiently to assure itself that the constitutional rights of the criminal defendant were not violated. Id. at 1199-1209. Although the Benally opinion cites the Humphrey case, it does not meaningfully distinguish it.

Second, consistent with the Humphrey decision, the foreman's statements in this case fit precisely within the phrase "extraneous prejudicial information." To begin with, the statements in my view went beyond a mere expression of "values or biases" and were intended to convey how, in the foreman's view, "Indians" act when they "get alcohol." Thus, the statements clearly constitute "information." See Wright & Gold, supra § 6075 at 520-21. Further, the statements were obviously "extraneous" because they were not "heard in open court and . . . subject[ed] to adversarial challenge . . . ." Id. at 519. Lastly, it appears the statements were "prejudicial" because they were clearly intended to assist the jury in finding facts, i.e., in concluding how Mr. Benally, a Native American, likely acted.

Third, the panel attempts to distinguish the foreman's comments as "generalized statements" and not "specific extra-record facts relating to the

-6-

defendant." 546 F.3d at 1237. To make this leap of logic, the panel opinion suggests that the statement "[w]hen Indians get alcohol, they all get drunk" does not concern a specific fact about Mr. Benally, a Native American defendant. This ignores the obvious syllogism. Additionally, the panel strains to conclude that the need to "send a message back to the reservation" does not relate to the facts underlying the charge, which involved Mr. Benally's alleged assault of a law enforcement officer. To me, it is vastly more reasonable interpretation of the "extraneous prejudicial information" exception to acknowledge that a juror's statements that denigrate the defendant's race concern supposed facts about this specific defendant.

### III

*Sixth Amendment rights versus the values embodied in Rule 606(b)*

Lastly, I also disagree with what I view as the panel's efforts to subordinate Mr. Benally's Sixth Amendment right to an impartial jury to the values supposedly embodied in Rule 606(b). Most notably, the panel attempts to compare Mr. Benally's case to Tanner v. United States, 483 U.S. 107 (1987). In my view, however, the two cases are factually and analytically distinct. In Tanner, two criminal defendants who were jointly tried and convicted moved for an evidentiary hearing and a new trial, citing information obtained after trial indicating that several of the jurors ingested alcohol, marijuana, and cocaine on various occasions during the trial. The district court denied the defendants'

motion. On certiorari review, the Supreme Court affirmed the district court's ruling. In doing so, the Court emphasized that the focus of the defendants' motion, i.e., impeachment of the jury's verdict based on juror incompetence resulting from alcohol and/or drug intoxication, placed the case squarely within the language of Rule 606(b). Further, the Court noted that "the legislative history [of Rule 606(b)] demonstrate[d] with uncommon clarity that Congress specifically understood, considered, and rejected a version of [the Rule] that would have allowed jurors to testify on juror conduct during deliberations, including juror intoxication." 483 U.S. at 125. Lastly, the Court concluded that the defendants' Sixth Amendment right to a competent, unimpaired jury could be adequately protected "by several aspects of the trial process," including (a) voir dire, (b) observations of the jury during trial by the trial court, counsel, and court personnel, (c) jurors' pre-verdict observations of each other, and (d) impeachment of the verdict "by nonjuror evidence of misconduct." Id. at 127.

In contrast, the focus of Mr. Benally's motion for new trial was not on establishing the jury's incompetence or impeaching the jury's verdict, but rather on establishing that one or more of the jurors lied during voir dire regarding their impartiality. To be sure, Mr. Benally, and in turn the district court, relied on affidavits from two of the jurors. As I have already explained, however, this did not, in my view, amount to an "inquiry into the validity of [the] verdict" for purposes of Rule 606(b). Moreover, I am not persuaded that the alternative

-8-

safeguards cited by the Court in <u>Tanner</u> for protecting a defendant's right to a competent jury are sufficient to adequately protect a defendant's right to an impartial jury. Unlike jurors' ingestion of alcohol or drugs, the act and effect of which can be observed by others and brought to the attention of the district court, jurors' racial biases can be much more easily hidden from observation. Indeed, that appears to be precisely what occurred here: despite the district court's best efforts at protecting Mr. Benally's Sixth Amendment right to an impartial jury, the jury foreman clearly lied during the voir dire proceedings about his ability to be impartial.

The distinction between an "impartial jury" and a sober one is the confining characteristic that the panel opinion ignores in its effort to grease the proverbial "slippery slope." The panel cannot see "how the principle . . . that Rule 606(b) is unconstitutional as applied in a case where it prevents rectification of a Sixth Amendment violation – could be confined to the context of racial prejudice . . . But once it is held that the rules of evidence must be subordinated to the need to admit evidence of Sixth Amendment violations, we do not see how the courts could stop at the 'most serious' such violations." 546 F.3d at 1241. The clear stopping point, in my view, rests in the Sixth Amendment requirement of juror impartiality.

Further, instead of addressing head-on whether Mr. Benally's jury was impartial, the panel attempts to rationalize its result by emphasizing the right to a

"fair trial" rather than a "perfect trial." In particular, the panel postulates, "[w]here the attempt to cure defects in the jury process–here, the possibility that racial bias played a role in the jury's deliberations–entails the sacrifice of structural features in the justice system that have important systemic benefits, it is not necessarily in the interest of overall justice to do so." But that disregards two important and indisputable facts: that the Sixth Amendment right to an impartial jury is itself a "structural feature" of the justice system, and that, as a consequence, a violation of this right is not susceptible to harmless error review.

No. 08-4009, *United States v. Benally*

**MURPHY**, Circuit Judge, joined by **LUCERO**, Circuit Judge, dissenting from denial of rehearing en banc.


I wholly agree with Judge Briscoe that the racist statements made by two jurors during deliberations in Benally's trial fall within the "extraneous prejudicial information" exception to Federal Rule of Evidence 606(b). Op. of Briscoe, J., dissenting from denial of rehearing en banc at 5-7. I likewise agree that the panel's contrary conclusion raises serious questions about the constitutionality of Rule 606. *Id.* at 7-10. Although I harbor some doubt about Judge Briscoe's confident assertion that the testimony at issue here falls outside the ambit of Rule 606, *id.* at 3-5, the issue is undoubtedly worthy of en banc review as the only other two circuits to directly address this issue have reached a conclusion contrary to that adopted by the panel and consistent with the view expressed by Judge Briscoe. *Id.* at 4-5 (discussing cases from Ninth and D.C. circuits); Fed. R. App. P. 35(a)(2), (b)(1)(B) (providing that circuit splits satisfy the question-of-exceptional-importance predicate to en banc review). Accordingly, but for the small caveat set out above, I join Judge Briscoe's dissent from denial of rehearing en banc.