**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Otis Thurmond CURRY and Vincent
Anthony Ciraolo, Defendants-
Appellants.**

No. 72–1831
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 9, 1973.

Rehearing Denied Jan. 29, 1973.

---

* Rule 18, 5th Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Richard Gale, Louis K. Lesperance, Miami, Fla., for Curry.

B. Paul Pettie, Jr., Pompano Beach, Fla., for Ciraolo.

Robert W. Rust, U. S. Atty., Charles O. Farrar, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants Curry and Ciraolo were convicted below of possessing and concealing counterfeit currency in violation of 18 U.S.C.A. § 472, of exchanging and transferring counterfeit currency in violation of 18 U.S.C.A. § 473, and of conspiracy to commit both of these offenses in violation of 18 U.S.C.A. § 371. On appeal they urge three grounds for reversal. Finding each ground to be without merit, we affirm the convictions.

### Excluded Testimony of Frightened Witness

At the hearing on defendants' motion to suppress evidence, John Morton, an apparently innocent party who chanced to be on Curry's business premises when counterfeit currency was delivered, related in detail his recollection of the events that transpired there. Curry had a front office and a back office separated by a partition. Morton testified, *inter alia*, that except for a brief time when Curry entered the back office to close the door he, Curry, was always in the front office with Morton. Further, Morton testified he did not know whether Curry from his position in the front office could see into the back office where the counterfeit money was delivered. At the close of the suppression hearing testimony the trial judge denied the motion to suppress and declared the court in recess until the afternoon session.

During the recess Morton told Curry's counsel that a government agent had made a threatening remark to him before the suppression hearing and had made him afraid to testify. As told by Morton, the remark was: "If you put your foot in this thing you'll get burned." Counsel for Curry brought

this matter to the attention of the court at the beginning of the afternoon session, and Morton stated under oath that the government had intimidated him, as described above. In response to the judge's questions Morton affirmed that his earlier testimony had been the truth and was unaffected by the intimidation except for one particular: but for the intimidating remark Morton would have testified that Curry definitely could not have seen into the back office from his position in the front office rather than professing ignorance on this point. The government agent alleged to have intimidated Morton took the witness stand and categorically denied doing so. The trial judge denied motions to exclude the testimony of the government witnesses and to dismiss the prosecution.

The trial began. After the first day of trial, Morton told Curry's defense counsel that he was afraid to testify voluntarily; thereafter Curry's counsel was unable to locate him for service of a subpoena. Morton being unavailable to testify at trial, the trial judge permitted defense counsel to introduce Morton's suppression hearing testimony into evidence, but refused to admit Morton's later statements regarding the intimidation and the change he would have made in his testimony on Curry's ability to see into the back office.

▆▆ Appellant Curry's first argument on this appeal is that the trial judge erred in excluding Morton's later statements, or at least that portion of them which modified his original version of the facts. Since Morton was unavailable to testify at trial and had been subject to cross-examination by all parties at the suppression hearing, his former testimony at the hearing was clearly admissible as an exception to the hearsay rule. See C. McCormick, Evidence §§ 254–62 (2d ed. 1972). Further, we must agree with appellant that Morton's later sworn testimony in which he modified his earlier statements should likewise have been admitted. This later testimony had a status under the hearsay rule identical to that of the suppression hearing testimony, and, if the earlier statements concerning Curry's ability to see into the back room were relevant, so were the later ones.

Although we conclude that the trial judge should have admitted this later statement, we cannot agree that his failure to do so constituted reversible error. First, the evidence of Curry's guilt was overwhelming. His accomplice Wilkerson testified at length and in detail concerning his agreement with Curry, under which Wilkerson delivered the counterfeit currency to Curry's place of business to be resold, and the two government agents who posed as prospective buyers strongly corroborated this testimony. The counterfeit bills themselves seized in Curry's back office provided further strong corroborating evidence. Secondly, we do not perceive any significant exonerating effect which Morton's amendment to his original testmony might have had. Since Morton originally placed Curry in the back office for a short time, purportedly to close the back door, his testimony does not conflict with the assertions of the accomplice and the government agents that Morton viewed the unpackaging of the counterfeit bills in the back office. More generally, viewing the total picture presented by the evidence, we can discover no exculpatory impact in this putative discrepancy as to a detail. Hence, we conclude the exclusion of the later Morton testimony was harmless error. *See* Fed.R.Crim.P., Rule 52(a).

### *Sleeping Juror*

▆▆ At the conclusion of the testimony of agent Insabella, a government witness, defense counsel moved for a mistrial, asserting that juror number two had been sleeping "during the time that witness was testifying." The motion was denied. On the next day of the trial defense counsel renewed the motion, and it was again denied. After the reading of the charge to the jury, defense counsel again moved for a mistrial, alleging that juror number two had taken a second nap during three-

fourths of the time the judge read the jury instructions. As to the first alleged nap, the trial judge stated he had not observed the juror during agent Insabella's testimony and did not know whether he had been asleep. The basis for the denial of the mistrial motions relating to this nap was that they came too late; counsel should have informed the court of the juror's inattentiveness when he first noticed it, not at the conclusion of the witness' testimony. The motion based on the second alleged nap was denied on the basis of the court's judicial knowledge, stated for the record, that juror number two had not been asleep since the first mistrial motions. Appellants argue the mistrial motions should have been granted.

 We find the trial judge's bases for denying the sleeping-juror mistrial motions were entirely sufficient. Defense counsel had a duty to call a juror's inattentiveness to the court's attention when first noticed. United States v. Carter, 10th Cir. 1970, 433 F.2d 874, 876. Counsel may not permit juror misconduct or inattentiveness to go unnoticed, thereby sewing a defect into the trial, and later claim its benefit. Also, "[t]he conduct of the juror in open court was a matter of which the trial court had judicial knowledge and could take judicial notice." *Id.* We have no basis for overturning the trial judge's finding that juror number two did not asleep after the first mistrial motion.

*Accomplice-Testimony Instruction*

Finally, appellant Curry argues that the jury instruction regarding the use of an accomplice's testimony was erroneous. Specifically, appellant complains that that part of the charge in which the judge stated the government has a right to use, and sometimes must use, accomplice testimony to prove its case constituted a disproportionately large part of the accomplice-testimony instruction and had the effect of overemphasizing the importance of the accomplice testimony in the minds of the jury.

Although an accomplice's uncorroborated testimony is sufficient to support a conviction in a federal court, Wooten v. United States, 5th Cir. 1967, 380 F.2d 230, cert. denied 389 U.S. 942, 88 S.Ct. 302, 11 L.Ed.2d 294, an accomplice's testimony is to be received with care and suspicion, and a cautionary instruction to this effect to the jury is desirable. *See* 2 C. Wright, Federal Practice and Procedure § 490 (1969). Appellant concedes, as he must, that the trial judge properly gave such a cautionary instruction. Further, it is not error to inform the jury that the government may, and sometimes must, rely on an accomplice's testimony to prove its case. United States v. Bartlett, 8th Cir. 1971, 449 F.2d 700; United States v. Corallo, 2d Cir. 1969, 413 F.2d 1306, 1322. Having reviewed and considered the jury charge as a whole, we find no disproportionate emphasis on the government's right to use an accomplice's testimony.

Affirmed.