**Lewis J. FISHER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 311, 1995.

Supreme Court of Delaware.

Submitted: Sept. 10, 1996.
Decided: Sept. 17, 1996.
Opinion Issued: Sept. 25, 1996.[1]

---

1. The September 17, 1996 Order is vacated and this Opinion is issued in lieu thereof.

Bernard J. O'Donnell, Public Defender's Office, Wilmington, for appellant.

John Williams, Attorney General's Office, Dover, for appellee.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

HOLLAND, Justice:

Following a jury trial in the Superior Court, the defendant-appellant, Lewis J. Fisher ("Fisher"), was convicted of several drug-related offenses. Fisher's defense counsel moved for a new trial based, in part, on the grounds that juror misconduct and/or bias denied Fisher his right to trial by an impartial jury. *see* Del. Const. art. I, § 7; U.S. Const. amend. VI, XIV, § 1. That motion was denied summarily by the Superior Court.

This is Fisher's direct appeal. This Court concluded that the absence of a hearing, on the allegation that the issue of race was improperly considered by one or more jurors, precluded it from effectively reviewing Fisher's "fair trial" claim. Accordingly, this matter was remanded to the Superior Court for a hearing.

■ On remand, each member of the jury was examined separately, *in camera*, with full right of examination and cross-examination by defense counsel and the prosecuting attorney. The Superior Court made findings of fact and determinations of law. The Superior Court filed a Report with this Court on June 28, 1996, which concluded: "[B]ecause the testimony on remand establishes that Fisher was convicted by less than twelve impartial jurors, a new trial is warranted in the interests of justice." [Appendix I]. The parties filed supplemental memoranda with this Court.

■ The improper injection of race as an issue into a criminal proceeding violates the fundamental rights which are guaranteed to all criminal defendants under the United States and Delaware Constitutions. *Weddington v. State*, Del.Supr., 545 A.2d 607, 614–15 (1988). The Superior Court's factual findings are supported by the record. Its legal conclusion is compelled by those findings.

For the reasons stated by the Superior Court in its June 28, 1996 Report to this Court, Fisher's judgments of conviction must be reversed and Fisher's Motion for a New Trial must be granted. This matter is remanded to the Superior Court for a new trial. The mandate shall issue immediately.

APPENDIX

IN THE SUPERIOR COURT OF THE
STATE OF DELAWARE IN AND
FOR KENT COUNTY

State of Delaware

v.

Lewis J. Fisher,

Defendant.

ID No. 9410011188

Supreme Court No. 311, 1995

IK94–10–0584

IK94–10–0586

IK94–11–0053

Submitted: June 17, 1996

Decided: June 28, 1996

John Williams, Esq., Deputy Attorney General, Department of Justice, for the State of Delaware.

Bernard J. O'Donnell, Esq., Wilmington, Delaware, for the defendant.

REPORT PURSUANT TO SUPREME
COURT RULE 19(c)

RIDGELY, President Judge.

This Report is submitted to the Delaware Supreme Court pursuant to Supreme Court Rule 19(c).

I.  BACKGROUND

On March 2, 1995, Defendant Lewis J. Fisher ("Fisher") was convicted by a jury after more than five hours of deliberations of Possession with Intent to Deliver Cocaine, 16 Del.C. § 4751, Trafficking in Cocaine Over 100 Grams; 16 Del.C. § 4753(a)(2)(c), and Resisting Arrest, 11 Del.C. § 1257. The jury

found Fisher not guilty of Maintaining a Vehicle for Keeping Controlled Substances, 16 Del.C. § 4755(a)(5), and Possession of Drug Paraphernalia, 16 Del.C. § 4771. Fisher, who did not testify at trial, is an African-American. All members of the jury were white.

Four days after the verdict, the Court received a letter from the jury foreman stating, in part, that he believed that the defendant did not receive a fair trial because two jurors allegedly said, "this defendant does not have a chance with this jury look there are no Blacks on it."

After the Court provided this letter to counsel, Fisher moved for a new trial on various grounds including the jury foreman's letter. Fisher specifically contended that the letter suggested that he was denied his Sixth Amendment right to an impartial jury.

After consideration of the memoranda of counsel, the Court found the alleged comment troubling, but denied a new trial because the jury foreman's letter did not reveal any extraneous matter, in the form of racial bias or otherwise, that might have played a role in the deliberations of the jury. The Court concluded that the letter was inadmissible under Delaware Rule of Evidence 606(b) [1] and that even if the letter was admissible, it did not show that the verdict was based upon any motive whatsoever except a fair and impartial consideration of the evidence consistent with the Court's instructions to the jury. State v. Fisher, Del.Super., Cr.A. No. IK94–10–0584, Ridgely, P.J., 1995 WL 465177 (June 27, 1995) (ORDER). Fisher appealed.

During the pendency of the appeal, the Delaware Supreme Court concluded that the absence of a hearing on the allegation that the issue of race was improperly considered by one or more jurors precluded it from

---

1.  D.R.E. 606(b) provides:
   **(b) Inquiry into Validity of Verdict or Indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection

therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

effectively reviewing Fisher's "fair trial" claim. The matter was remanded for an *in camera* hearing on Fisher's claim that he was denied his right to be tried by an impartial jury, as a result of one or more jurors' improper consideration of race as an issue in his case. The scope of the examination of each juror was to be as provided in Delaware Rule of Evidence 606(b). *Fisher v. State*, Del.Supr., No. 311, 1995, Holland, J. (April 3, 1996) (ORDER).

This Court conferred with counsel and an order was issued to the Prothonotary to summon each juror to appear for an evidentiary hearing [2].

## II. THE REMAND HEARING

At the remand hearing each juror who deliberated in this case testified *in camera* with full right of examination and cross-examination by defense counsel and the prosecuting attorney. The jury foreman testified that after jury selection but before any testimony a male juror remarked in the jury room: "This guy don't have a chance. Look around us. There's no blacks in here. We are all white." The jury foreman observed but did not hear another comment by another juror which prompted a few jurors to chuckle.

The jury foreman recounted at the remand hearing for the first time that during the deliberations, there was another racial reference [3]. He said:

> Every once in a while I heard the one lady discuss the black guy, get him off the

street, he's a drug dealer. *Any black guy who would be in an area at that time with this, he's guilty.* (emphasis added).

No other juror recalled these remarks being made either before or during the deliberations in this case which were described by several jurors as "animated." However, one juror did recall her surprise when the jury foreman posed the question, "Do you feel he is guilty because he is black?" I infer that this rhetorical question was prompted by the female juror's disclosure of actual bias. This corroboration convinces the Court that the testimony of the jury foreman is credible.

## III. CONCLUSIONS

"Juror bias, of course, will not be tolerated in our judicial system." *Styler v. State*, Del. Supr., 417 A.2d 948, 951 (1980). "[A] fair trial that is free of improper racial implications is so basic to the federal Constitution that an infringement upon that right can never be treated as harmless error." *Weddington v. State*, Del.Supr., 545 A.2d 607, 614–15 (1988).

The male juror's inappropriate statements described above and made before any evidence was presented did not reveal any extraneous matter in the form of racial bias or otherwise that played a role in the deliberations of the jury in this case. However, the same cannot be said of the female juror's remarks. She injected into the deliberations her own prejudice that *any* African–American who would be in the area is guilty [4].

---

**2.** The form of the Order to be issued was consented to by counsel then representing the defendant and the State at an office conference on April 16, 1996.

**3.** The jury foreman explained why this was not in his March 1995 letter as follows:

> I wrote that because I couldn't sleep. I was up. I probably wasn't just really thinking. I was just trying to get some of the statements out to relieve—and to hope that you understand the position that we were in back there. No, I don't know why I didn't. (Transcript A–28).

**4.** Evidence of this juror's statements is not precluded by Delaware Rules of Evidence 606(b) on the facts of this case. There are important policy reasons which are fostered by the exclusionary

rule of the common law and D.R.E. 606(b) against a juror's impeachment of his own verdict including the discouragement of post-verdict harassment of jurors, the encouragement of open discussion among jurors, the avoidance of jury tampering, and the promotion of verdict finality. *See Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). However, "there might be instances in which such testimony of the juror could not be excluded without 'violating the plainest principles of justice.'" *McDonald v. Pless*, 238 U.S. 264, 268–69, 35 S.Ct. 783, 785, 59 L.Ed. 1300 (1915). As noted by Professors Wright and Gold:

> Evidentiary rules that insulate from discovery the violation of constitutional rights may themselves violate those rights.
> .... As a consequence of this collision of constitutional principles, blanket rules either

"The law allows the grant of a new trial if a juror was prejudiced from the outset of the case." *Bolt v. Hickok,* 887 F.Supp. 709, 713 (D.Del.1995); *King–Size Publications, Inc. v. American News Co.,* 194 F.Supp. 109 (D.N.J.), *cert. denied,* 368 U.S. 920, 82 S.Ct. 242, 7 L.Ed.2d 136 (1961); 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2810 (1995). Because the testimony on remand establishes that Fisher was convicted by less than twelve impartial jurors, a new trial is warranted in the interests of justice. Superior Court Criminal Rule 33.

The Prothonotary shall transmit forthwith this report and the record to the Clerk of the Supreme Court of Delaware.

**IT IS SO ORDERED.**

/s/ Henry duPont Ridgely
/s/ President Judge

cmh

oc: Prothonotary

xc: Clerk of the Supreme Court
John Williams, Esq.
Bernard J. O'Donnell, Esq.
File

excluding all juror testimony of bias or admitting all such testimony are inappropriate. A balance must be struck, protecting parties from the most egregious cases of jury bias while leaving the jury free to decide most cases without fear of judicial intrusion. While lines may be difficult to draw in many cases, it should be clear that among the most serious cases of jury bias are those involving racial prejudice. Eradication of the evil of state supported racial prejudice is at the heart of the Fourteenth Amendment. This suggests that the constitutional interests of the affected party are at their strongest when the jury allegedly employs such bias. The operation of racial prejudice undermines the jury's ability to perform the role of preventing governmental op-

pression and, in fact, converts the jury itself into an instrument of that oppression. This also suggests that the policy interests behind the enforcement of Rule 606(b) are at their weakest in such a case.

27 Wright and Gold, *Federal Practice and Procedure* § 6074 (1990). The balance tips in favor of admissibility in this case. To exclude the testimony of the female juror's actual bias would nullify the enforcement of Fisher's basic right to a trial by an impartial jury of twelve who will decide the case free of improper racial implications. Thus, the policy reasons for exclusion of testimony must yield.