**Michael DURHAM, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 227,2004.**

Supreme Court of Delaware.

Submitted: Dec. 1, 2004.
Decided: Jan. 12, 2005.

27. *Id.*

28. *See Wilson v. State*, 305 A.2d 312, 317 (Del.1973).

Sandra W. Dean, Office of the Public Defender, Dover, Delaware, for appellant.

John Williams, Department of Justice, Dover, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

STEELE, Chief Justice.

Michael Durham appeals his multiple felony convictions in the Superior Court,

claiming the trial judge erred by denying his postverdict motion for a new trial. Durham argued in his motion that a sleeping juror denied him a fair trial. After conducting a hearing, the trial judge found no evidence that the juror actually fell asleep. Because the trial judge's findings are supported by competent evidence, we find no abuse of discretion. Accordingly, we affirm.

## I.

In August 2002, Durham and two others entered Michael Taylor's Dover home seeking money. The three physically accosted and chased Taylor throughout the house. One, carrying a handgun, fired at Taylor. Another punched him in the face. By the time police arrived, all three had fled. Suffering from various injuries, Taylor identified his assailants as Durham, Quentin Henry, and one he knew only as "Peebo." Durham was later tried before a jury in Superior Court and convicted of first-degree burglary, first-degree attempted robbery, and a variety of firearms and other charges.[1]

Following the initial afternoon of jury deliberations, Durham orally moved for a mistrial, contending for the first time that Juror Number Nine slept during parts of the trial. The trial judge reserved decision on the motion, the trial continued, and the jury ultimately returned its verdict. Durham then moved for a new trial. The trial judge conducted an evidentiary hearing in January 2004, taking testimony from a corrections officer, bailiff, and two members of the gallery present at trial. Juror Nine also testified.

In his March 2004 order, the trial judge recounted the evidence. He noted that although the two observers stated Juror Nine closed her eyes and put her head down at various times, neither thought she was actually asleep. The bailiff, present for the entire trial, testified that he "never saw her sleeping." Juror Nine also insisted she was attentive throughout the trial. Based on this evidence, the trial judge found that, even if Juror Nine was "fighting sleep," this fact alone neither proved that she slept or was otherwise inattentive during the proceedings. He therefore found that Juror Nine's conduct did not prejudice Durham and denied the motion for a new trial.[2]

## II.

■ It is well established in Delaware that the trier of fact is "the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony."[3] When supported by competent evidence, we will not disturb a trial judge's findings of fact.[4] We review the grant or denial of a new trial for abuse of discretion.[5]

■ In criminal proceedings, "the truth of every accusation ... should ... be confirmed by the unanimous suffrage of twelve ... equals and neighbors, indifferently chosen and superior to all suspi-

---

1. *State v. Durham*, Del.Super., I.D. No. 00161286 (Dec. 4, 2003).

2. *State v. Durham*, 2004 WL 440219, 2004 Del.Super. LEXIS 59. The testimony and trial judge's findings are recounted in *id.* at *1–2, 2004 Del.Super. LEXIS at *2–4.

3. *Tyre v. State*, 412 A.2d 326, 330 (Del.1980).

4. *See, e.g., Weedon v. State*, 788 A.2d 132 (Del.2001); *Albury v. State*, 551 A.2d 53, 60 (Del.1988); cf. *DeJesus v. State*, 655 A.2d 1180, 1191 (Del.1995) (holding that trial judge's factual findings will be upheld unless "clearly erroneous").

5. *Barriocanal v. Gibbs*, 697 A.2d 1169, 1171 (Del.1997).

cion."[6] A violation of this right to a fair trial, codified in the Sixth Amendment, renders any finding of guilt void.[7] In the juror misconduct context, however, a defendant is entitled to a new trial "only if the error complained of resulted in actual prejudice or so infringed upon defendant's fundamental right to a fair trial as to raise a presumption of prejudice."[8] Thus, where a defendant can demonstrate a "reasonable probability of juror taint of an inherently prejudicial nature, a presumption of prejudice should arise that [a] defendant's right to a fair trial has been infringed...."[9] The trial judge, nonetheless, has "wide discretion in deciding how to handle a sleeping juror."[10]

## III.

Regardless of whether Juror Nine actually slept or simply struggled to stay awake, Durham claims that a juror in either frame of mind cannot fully participate. Because Juror Nine was "arguably" sleeping throughout most of the proceedings, Durham contends he was deprived of the due-process and fair-trial guarantees

embedded in the Fifth and Sixth Amendments.

In *Bialach v. State*,[11] the defendant moved for postconviction relief, claiming that a juror slept through closing arguments and jury instructions. The prosecutor alluded to this fact in a post-instruction dialogue between counsel and the trial judge, joking that he and defense counsel had put one of the jurors to sleep. Bialach seized on this remark as evidence of a sleeping juror, and thus urged the trial judge to reverse the jury's finding of guilt. The trial judge denied his motion.

On appeal, we affirmed, noting that the remark was meant—and understood by the trial judge—to be facetious. We noted that there was "no record evidence at all to support Bialach's allegation that any juror was asleep."[12] Because of this lack of evidence, and other procedural defects in Bialach's claim, we had no occasion to discuss the constitutional ramifications of a sleeping juror.

■ Several federal courts, on the other hand, have encountered these claims, and have generally disallowed them.[13] To war-

---

6. *Flonnory v. State,* 778 A.2d 1044, 1050–1051 (Del.2001), *quoting* 4 WILLIAM BLACKSTONE, COMMENTARIES *343.

7. *See, e.g., United States v. Freitag,* 230 F.3d 1019, 1023 (7th Cir.2000).

8. *Hughes v. State,* 490 A.2d at 1034, 1043 (Del.1985).

9. *Massey v. State,* 541 A.2d 1254, 1257 (Del. 1988); *see generally* George L. Blum, Annotation, *Inattention of Juror from Sleepiness or Other Cause as Ground for Reversal or New Trial,* 59 A.L.R. 5th 1 (2003) (collecting cases).

10. *Bialach v. State,* 773 A.2d 383, 386 (Del. 2001), *citing Tanner v. United States,* 483 U.S. 107, 113–14, 127, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). *See also United States v. Springfield,* 829 F.2d 860, 864 (9th Cir.1987) ("The

[district court] had discretion to resolve the problem of the sleeping juror. It considered carefully the testimony missed during the nap and found that it was insubstantial. We find no abuse of discretion in the method used to remedy the situation.").

11. 773 A.2d 383 (Del.2001).

12. *Bialach,* 773 A.2d at 386.

13. *See, e.g., United States v. Tierney,* 947 F.2d 854, 868–69 (8th Cir.1991) (defendant's assertions that jurors slept through "critical" parts of defendant's case "too vague to establish prejudice"); *United States v. Springfield,* 829 F.2d 860, 864 (9th Cir.1987) (defendant not deprived of right to fair trial and impartial jury where sleeping juror missed "insubstantial" testimony). *But cf. United States v. Bradley,* 173 F.3d 225, 230 (3d Cir.1999) (observation of snoring juror by trial judge and

rant a new trial, defendants must demonstrate the juror misconduct resulted in prejudice that deprived them of the right to a fair trial.[14] To prevail on a sleeping-juror claim, the defendant must show that prejudice resulted from the jury ignoring "essential portions of the trial."[15] Thus, some courts have held that a new trial is not warranted where a juror slept through the jury charge,[16] or even the "critical presentation of [defendant's] evidence and the cross-examination of witnesses for the prosecution."[17]

Although trial judges have considerable latitude in dealing with a sleeping juror, the Ninth Circuit, for example, has issued guidelines to its district courts. In *United States v. Barrett*,[18] the Court remanded an appeal "with instructions that the trial judge conduct a hearing to determine whether the juror in fact was sleeping during trial and, if so, whether the juror's being asleep prejudiced [defendant] Barrett to the extent that he did not receive a fair trial."[19] Furthermore, several state appellate courts—consistent with *Barrett*—have reversed a trial judge's decision not to inquire into the extent of a juror's inattention, both when the judge knew of the sleeping juror,[20] or when such circumstances were brought to the court's attention during the proceedings.[21] Other federal circuits, however, have remarked that trial judges may take judicial notice that a juror had not been sleeping without the necessity of an independent hearing.[22]

Finally, the United States Supreme Court, in *dicta*, has commented on the undesirability of exposing jury verdicts to judicial scrutiny:

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror ... inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process.[23]

The Court also expressed concern about the ramifications of public scrutiny of verdicts.[24]

■■■■ Although the Sixth Amendment right to a fair trial by an impartial jury is

law clerk justified preverdict dismissal from jury panel).

14. *United States v. Clapps*, 732 F.2d 1148, 1152 (3d Cir.1984) (defendants had to show "likelihood of prejudice" to secure new trial).

15. *United States v. Ortiz*, 1993 WL 303286, 1993 U.S. Dist. LEXIS 10856 (E.D.Pa.), *citing United States v. Hendrix*, 549 F.2d 1225, 1229 (9th Cir.1977).

16. *Ortiz*, 1993 U.S. Dist. LEXIS 10856.

17. *Tierney*, 947 F.2d 854, 869.

18. 703 F.2d 1076 (9th Cir.1983).

19. *Id.* at 1083.

20. *People v. Evans*, 710 P.2d 1167 (Colo.Ct. App.1985).

21. *State v. Reevey*, 159 N.J.Super. 130, 387 A.2d 381 (App.Div.1978); *People v. Valerio*, 141 A.D.2d 585, 529 N.Y.S.2d 350 (1988).

22. *United States v. Curry*, 471 F.2d 419, 421–22 (5th Cir.1973), *cert. denied*, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973); *United States v. Carter*, 433 F.2d 874, 876 (10th Cir. 1970) ("We have no basis for setting aside the finding of the trial judge. In any event counsel made no point to the court of the juror's condition or attitude during the trial. If [defense counsel] saw any misconduct it was his duty to call it to the attention of the court at the time.").

23. *Tanner*, 483 U.S. at 120, 107 S.Ct. 2739.

24. *Id.* at 120–21, 107 S.Ct. 2739 *citing* Note, *Public Disclosures of Jury Deliberations*, 96 HARV. L. REV. 886, 888–892 (1983).

a cornerstone of the American criminal justice system, record examinations of jurors intrude upon the anonymity function central to the common-law system of fact-finding by a group of one's peers. While in some instances a juror's thought process must be opened up to judicial scrutiny, such as in the face of allegations of bias, corruption, or, as here, inattention, the constitutional considerations of a fair trial must be balanced with those that implicate the fairness of the trial process as a whole.[25] Jury service is a civic duty common to all citizens; those who undertake this task should not fear revelation of their decision methodology. Only where a defendant has specifically demonstrated a compromise in the integrity of the verdict should protracted scrutiny, and a new trial, ensue.[26]

■■ Durham alleges that Juror Nine slept intermittently through the jury charge, the prosecutor's closing argument, opening statements, and direct examination of two witnesses. He fails, however, to point to specific testimony that Juror Nine may have missed. Instead, the testimony presented indicates only that the juror's eyes would close and then reopen, or that she was "fighting sleep." Absent a particularized showing of inattention, there can be no "reasonable probability of juror taint" that is "inherently prejudicial." Moreover, in the face of only a general allegation of juror misconduct, the sanctity of the jury's deliberation process, emphasized in *Tanner*, weighs against an extensive, postverdict judicial investigation of Juror Nine. Finally, even if Durham had presented specific evidence of inattention, it is not clear how missing the prosecutor's closing statement, a discourse designed to convince the jury to return a guilty verdict, could be prejudicial to an effective defense presentation.

The factors for consideration thus revolve around the extent of Juror Nine's inattention, whether the trial judge or the parties were aware of the sleeping juror during trial, and Durham's ability to produce evidence demonstrating that the juror's lapse was so severe that he was denied a fair trial. Additional considerations are the interests in the finality of judgments and insulation of the decision-making process from scrutiny by either the government or the public. We commend the trial judge, faced with postverdict allegations of juror inattentiveness, for properly examining Juror Number Nine, promptly making a comprehensive factual inquiry into Durham's claim, and analyzing Durham's claim in an orderly, logical deductive-reasoning process. In the absence of testimony that Juror Number Nine actually missed portions of the trial, Durham could not have suffered any prejudice. Based on this record, we find no abuse of discretion.

### III.

For these reasons, the judgment of the Superior Court is affirmed.

---

**25.** See *Fisher v. State,* 690 A.2d 917 (Del.1996) (holding juror's racial bias during deliberations required a new trial).

**26.** *Id.*