Judge TAUBMAN dissenting.
¶ 79 This case presents the important issue of whether CRE 606(b) must yield to the Sixth Amendment right to an impartial jury where evidence is presented of a juror's previously unknown racial bias arising during jury deliberations. Although this is an issue of first impression in Colorado, numerous state and federal courts are divided on the issue. Because I disagree with the majority that CRE 606(b) prohibits consideration of Juror 11's apparent racial bias, I respectfully dissent. To the contrary, I would hold that CRE 606(b) must yield to the Sixth Amendment right of defendant, Miguel Angel Pena-Rodriguez, to an impartial jury, because racial bias apparently influenced Juror 11's decision-making process. Accordingly, I believe the trial court erred by not considering evidence of racial bias arising during deliberations, and by limiting the scope of Pena-Rodriguez's motion for new trial to the issue of whether Juror 11 misrepresented his law enforcement background. Further, I would reverse Pena-Rodriguez's conviction and remand for further proceedings, because the trial court's error is not harmless beyond a reasonable doubt.
I. Background
¶ 80 I adopt the majority's recitation of the relevant facts, but reiterate those important to my dissent.
*479 ¶ 81 Following Pena-Rodriguez's trial and conviction, two affidavits from other jurors were obtained by Pena-Rodriguez's counsel. These affidavits stated, among other things, that Juror 11 had made statements during jury deliberations which indicated he based his decision on racial bias.[1]
¶ 82 The first affidavit stated that Juror 11 said, "I think he did it because he is Mexican and Mexican men take what they want." The affidavit also stated that Juror 11 "made other statements concerning Mexican men being physically controlling of women because they have a sense of entitlement and think they can 'do whatever they want' with women." The second affidavit added:
[Juror 11] believed that the defendant was guilty because in his experience as [an] ex-law enforcement officer, Mexican men had a bravado that caused them to believe they could do whatever they wanted with women.... He said that where he used to patrol, nine times out of ten Mexican men were guilty of being aggressive toward women and young girls.... He said that he did not think the alibi witness was credible because, among other things, he was "an illegal."
The trial court declined to consider this evidence in conjunction with Pena-Rodriguez's motion for a new trial, because Pena-Rodriguez did not question the jurors specifically regarding racial bias in voir dire, and because the court believed such testimony to be barred by CRE 606(b).
II. Preservation of Constitutional Challenge
¶ 83 The majority holds that because Pena-Rodriguez did not ask questions specifically related to racial bias during voir dire, his constitutional as-applied challenge to CRE 606(b) fails. I disagree.
A. Standard of Review
¶ 84 The majority applies an abuse of discretion standard and defers to the trial court's determination that Pena-Rodriguez did not ask sufficient questions regarding racial bias during voir dire. I disagree with the application of this standard, and would instead review the trial court's conclusion de novo.
¶ 85 Whether the questions asked during voir dire were sufficient is a mixed question of fact and law. People v. Matheny, 46 P.3d 453, 461-62 (Colo.2002). Under this standard, historical facts are entitled to deference, while the application of those facts to a legal standard is reviewed de novo. Id. at 461. Further, whether a defendant waived his or her constitutional rights is a question we review de novo. See People v. Bergerud, 223 P.3d 686, 693 (Colo.2010) ; People v. Aguilar-Ramos, 86 P.3d 397, 400-01 (Colo.2004).
¶ 86 Here, the historical facts include questioning during voir dire. To the extent these facts were at issue, I would afford deference to the trial court's findings. However, whether the voir dire legally constituted a sufficient inquiry into potential racial bias is a question of law that must be reviewed de novo. Accordingly, I believe it is necessary to conduct a de novo review of whether the questions asked sufficiently addressed racial bias before deciding whether Pena-Rodriguez's failure to ask certain questions regarding racial bias constitutes a waiver of his right to an impartial jury.
B. Duty During Voir Dire
¶ 87 The majority relies on Maes v. District Court, 180 Colo. 169, 175-76, 503 P.2d 621, 624-25 (1972), to support the conclusion that Pena-Rodriguez had an obligation to explicitly question jurors regarding racial bias, and that his failure to do so resulted in *480 a waiver of his constitutional right to a fair trial. However, I do not read Maes to create such an obligation.
¶ 88 In Maes, the defendant attempted to question potential jurors about racial bias during voir dire. Id. at 172, 503 P.2d at 623. The prosecution objected to such questioning. The trial court concluded that unless proof of the defendant's racial background would be presented, the defendant could not ask questions about race during voir dire. After assurances from the defendant's counsel that such proof would be presented, the trial court allowed the questioning. However, the defendant never offered proof regarding his racial background. Id. Accordingly, the trial court granted the prosecution's motion for mistrial. Id.
¶ 89 The supreme court reversed the trial court's ruling, holding that the defendant's "right to inquire on voir dire concerning prejudice against a person of a minority race" is undisputed. Id. at 175-76, 503 P.2d at 624-25. In dictum, the court added, "It was counsel's duty to make diligent inquiry into the existence of potential prejudice that might exist in the jurors' minds by reason of petitioner's racial heritage." Id. at 176, 503 P.2d at 625 ; see also Hardesty v. Pino, 222 P.3d 336, 340 (Colo.App.2009) (where a statement of the court is not part of its "holding and its necessary rationale," it is dictum).
¶ 90 For two reasons, I do not read the court's dictum to create a rule that requires counsel to explicitly inquire into issues of racial bias. First, dictum is not controlling precedent. Z.J. Gifts D-2, L.L.C. v. City of Aurora, 93 P.3d 633, 640 (Colo.App.2004). Second, even if the court's statement is controlling, it does not oblige defense counsel to explicitly question jurors regarding racial bias. Rather, it creates a right for counsel to ask questions necessary to eradicate racial bias from a jury.
¶ 91 As discussed below, Pena-Rodriguez's counsel asked sufficient questions during voir dire to satisfy this obligation. Counsel was not required to ask specifically about racial bias, because legitimate tactical considerations militated against doing so. In United States v. Villar, 586 F.3d 76, 87 n. 5 (1st Cir.2009), the First Circuit recognized that,
many defense attorneys have sound tactical reasons for not proposing specific voir dire questions regarding racial or ethnic bias because it might be viewed as insulting to jurors or as raising an issue defense counsel does not want to highlight.... [V]oir dire using questions about race or ethnicity may not work to a defendant's benefit where one of the [suspects] was described [based on his race].
¶ 92 Similarly, questions specifically addressing racial prejudice may be less effective in detecting racial bias than open-ended questions regarding a juror's ability to be fair. See Roberto Aron et al., Trial Communication Skills § 30:4 (2d ed. 2011) ("Counsel should ask potential jurors open-ended questions and let them talk about themselves, so as to better perceive those attitudes and beliefs potentially relevant to the case that might otherwise remain hidden.")[2] A juror would likely feel more comfortable stating that he or she may not be able to be fair to a defendant generally, rather than admitting in open court that he or she harbored racial prejudice. See generally Smith v. Phillips, 455 U.S. 209, 221-22, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring) ("[a] juror may have an interest in concealing his own bias"). Accordingly, trial counsel may decide that they would be more successful in detecting a biased juror through open-ended questioning, rather than questions addressing specific biases.
¶ 93 Thus, it is unlikely the supreme court intended to create an absolute rule, which could cause a defendant's race to prejudice him or her. At most, Maes requires counsel to ensure that sufficient questions are asked during voir dire to determine whether the jurors are "capable and willing to decide the case solely on the evidence before [them]."
*481 McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) ; People v. Wilson, 114 P.3d 19, 24 (Colo.App.2004) ("A trial court must receive some assurance from a prospective juror that he or she is willing and able to accept the basic principles of criminal law and to render a fair and impartial verdict based upon the evidence admitted at trial and the court's instructions.").
¶ 94 Here, sufficient questions were asked during voir dire to establish that the jurors would base their verdict on the facts of the case, rather than on bias or prejudice. Specifically, the jurors were asked whether they could "render a verdict solely on the evidence presented at trial and the law," without regard to "any other ideas, notion, or beliefs about the law." See Wilson, 114 P.3d at 24. They were also asked whether they had "a feeling for or against the Defendant." Accordingly, I conclude that Pena-Rodriguez did not have an obligation to ask questions specifically addressing racial bias.
C. Waiver of Constitutional Rights
¶ 95 Even if Pena-Rodriguez was obligated to ask further about racial bias, for three reasons his failure to do so would not result in a waiver of his constitutional right to an impartial jury. First, nothing in Maes suggests that the supreme court intended for such a waiver to occur. Second, in reaching its conclusion that Pena-Rodriguez waived his rights, the majority cites five cases: People v. Asberry, 172 P.3d 927 (Colo.App.2007) ; Ma v. People, 121 P.3d 205 (Colo.2005) ; People v. Crespin, 635 P.2d 918 (Colo.App.1981) ; People v. Lewis, 180 Colo. 423, 427-28, 506 P.2d 125, 127 (1973) ; and People v. Cevallos-Acosta, 140 P.3d 116, 121 (Colo.App.2005), all of which are distinguishable. Third, Pena-Rodriguez did not waive his rights knowingly, voluntarily, and intelligently.
¶ 96 First, Maes did not address the question of waiver at all. Its above-quoted language about the "duty" of defense counsel was dictum, as noted above.
¶ 97 Second, the cases on which the majority relies are distinguishable. Asberry, Ma, Crespin, and Lewis are distinguishable because they involve waiver of a defendant's right to challenge a juror where the defendant knew of the juror's disqualifying characteristic, but failed to adequately challenge the juror on that ground. None of the cases cited by the majority involves an instance where the defendant was unaware of a juror's potential or actual bias. Here, however, Pena-Rodriguez had no knowledge of Juror 11's alleged bias. Accordingly, the rule set forth in these cases, that a challenge for cause to a juror's qualifications is waived through lack of diligence, should only apply to cases where the basis for a challenge is known during voir dire. Thus, these cases are distinguishable.
¶ 98 Cevallos-Acosta is also distinguishable, because the division declined to consider a denial of a challenge for cause because the defendant failed to preserve his challenge. 140 P.3d at 121. Here, however, defendant preserved his challenge by moving for a new trial after receiving evidence of Juror 11's bias. Additionally, the juror in Cevallos-Acosta affirmatively stated that he could be impartial despite the defendant's race-thereby disproving the existence of actual bias under section 16-10-103(1)(j). 140 P.3d at 122.
¶ 99 Accordingly, these cases do not support the majority's conclusion that the failure to ask questions about race during voir dire prevents a defendant from making an as-applied constitutional challenge to CRE 606(b), based on previously unknown bias and the Sixth Amendment right to an impartial jury.
¶ 100 Third, Pena-Rodriguez did not waive his right to an impartial jury knowingly, voluntarily, and intentionally. Although there is no Colorado case discussing the waiver of a defendant's constitutional right to an impartial jury, our courts have held that a waiver of a defendant's Sixth Amendment right to a jury must occur knowingly, voluntarily, and intentionally. Hinojos-Mendoza v. People, 169 P.3d 662, 669 (Colo.2007) ; People v. Norman, 703 P.2d 1261, 1271 (Colo.1985) ; People v. Thompson, 121 P.3d 273, 275 (Colo.App.2005). Similarly, waiver of other fundamental constitutional rights must be done by the defendant, knowingly, voluntarily, *482 and intentionally. Hinojos-Mendoza, 169 P.3d at 669 ("The right to counsel, the right to testify, the right to trial by jury, and the entrance of a guilty plea are sufficiently personal and fundamental as to require a voluntary, knowing, and intentional waiver by the defendant himself."). The Sixth Amendment right to a jury, however, also requires that a jury be impartial. U.S. Const. amend. VI; People v. Lefebre, 5 P.3d 295, 300 (Colo.2000). Accordingly, it would follow that a waiver of the right to an impartial jury would similarly have to be made knowingly, voluntarily, and intentionally. Federal courts have reached similar conclusions. See United States v. Zarnes, 33 F.3d 1454, 1472 (7th Cir.1994) ("A waiver [of the right to an impartial jury] must be knowing and voluntary."); see also United States v. Desir, 273 F.3d 39, 43 (1st Cir.2001) (a defendant waives his or her right to an impartial jury if he or she knowingly withholds information of jury bias from the court).
¶ 101 The majority cites State v. Shepherd, 2009 UT App. 11, ¶ 5, 2009 WL 99587 (unpublished memorandum decision), for the proposition that failure to adequately question jurors about racial bias during voir dire waives a Sixth Amendment challenge to an impartial jury. However, in Shepherd, the court only held that a defendant's waiver of the right to an impartial jury must be knowing. Id. (discussing the "requirement that a criminal defendant explore known areas of potential bias with a prospective juror or else be deemed to have waived objection to the juror on grounds of bias") (emphasis added). In Shepherd, the defendant was aware that the challenged juror knew him, but failed to bring this to the court's attention. Id. at ¶ 6. Accordingly, the court held that he knowingly waived his right to challenge the juror.
¶ 102 Holmes v. State, 65 Md.App. 428, 439-40, 501 A.2d 76, 81 (1985), rev'd on other grounds, 310 Md. 260, 528 A.2d 1279 (1987), stands for a similar proposition. Id. at 432-40, 501 A.2d at 78-83 (defendant waived his right to challenge the trial court's decision not to ask about race during voir dire when he requested the judge to ask such questions, but then failed to object when the judge did not do so).
¶ 103 Finally, People v. Rogers, 2012 COA 192, ¶ 15, 317 P.3d 1280 (Colo.App.2012), is also distinguishable because it involves intentional waiver of a constitutional right. There, the defendant intentionally introduced testimonial evidence by opening the door to the evidence. Id. Here however, Pena-Rodriguez did not intentionally waive his right to challenge his verdict based on an impartial jury. Rather, he obtained assurances from the jurors during voir dire that they could decide the case impartially. That he did not explicitly explore the issue of racial bias does not constitute an intentional waiver of his right to an impartial jury.
¶ 104 Here, Pena-Rodriguez did not waive his right to an impartial jury knowingly and voluntarily. At no point before or during trial was he aware of Juror 11's apparent racial bias. Additionally, the lack of questioning specifically addressing racial bias cannot be considered a knowing and voluntary waiver of a fundamental constitutional right. See People v. Curtis, 681 P.2d 504, 514 (Colo.1984) ("The courts do not presume acquiescence in the loss of fundamental constitutional rights, and therefore indulge every reasonable presumption against waiver."); Palmer v. People, 680 P.2d 525, 527 (Colo.1984) (a knowing and voluntary waiver of a fundamental constitutional right cannot be inferred from silence).
¶ 105 Holding that the Sixth Amendment right to an impartial jury outweighs CRE 606(b) would not render section 16-10-103(1)(j) a nullity. As I state below, my opinion is limited to the facts in this case-apparent racial prejudice of one juror. Section 16-10-103(1)(j), however, applies to any situation in which a juror's state of mind evinces bias against a party. Accordingly, while my opinion may limit application of this statute in those cases in which allegations arise of a racially biased juror, it does not render the statute a nullity.
¶ 106 Accordingly, I conclude Pena-Rodriguez did not waive his Sixth Amendment right to an impartial jury, and therefore may challenge Rule 606(b) as applied.
*483 III. Sixth Amendment
¶ 107 Pena-Rodriguez asserts that CRE 606(b) is unconstitutional as applied because it prevents him from protecting his Sixth Amendment right to an impartial jury. I agree.[3]
¶ 108 A juror compromises the constitutional guarantees of our justice system when he or she forgoes his or her role as a fact finder and, instead, forms conclusions of guilt or innocence based on racial bias. "A racially biased juror sits with blurred vision and impaired sensibilities and is incapable of fairly making the myriad decisions that each juror is called upon to make in the course of a trial. To put it simply, he cannot judge because he has prejudged." Turner v. Murray, 476 U.S. 28, 43, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986) (Brennan, J., concurring). Thus, when the trial court obtains clear evidence of racial bias by a deliberating juror, the policy considerations supporting CRE 606(b) must yield to the Sixth Amendment right to an impartial jury. If we were to hold otherwise, "the jury system may survive, but the constitutional guarantee on which [the jury system] is based will become meaningless." Tanner v. United States, 483 U.S. 107, 142, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) (Marshall, J., concurring in part and dissenting in part).
¶ 109 Colorado courts have consistently held that "an impartial jury is a fundamental element of the constitutional right to a fair trial." Morrison v. People, 19 P.3d 668, 672 (Colo.2000) ; see also Harris v. People, 888 P.2d 259, 264 (Colo.1995) ("the right to trial includes the right to trial by an impartial jury empaneled to determine the issues solely on the basis of the evidence introduced at trial rather than on the basis of bias or prejudice for or against a party"); People v. Chavez, 313 P.3d 594, 596 (Colo.App.2011) (same). In the context of excusing jurors for cause, "[a] defendant's right to an impartial jury is violated if the trial court fails to remove a juror biased against the defendant." Morrison, 19 P.3d at 672. Thus, "[w]here a jury trial is granted, the right to a fair and impartial jury is a constitutional right which can never be abrogated." Brisbin v. Schauer, 176 Colo. 550, 552, 492 P.2d 835, 836 (1971), overruled on other grounds by Marshall v. Kort, 690 P.2d 219 (Colo.1984).
¶ 110 The right to a jury free of racial bias is of particular importance. See Aldridge v. United States, 283 U.S. 308, 314, 51 S.Ct. 470, 75 L.Ed. 1054 (1931) ("if any [juror] was shown to entertain a [racial] prejudice which would preclude his rendering a fair verdict, a gross injustice would be perpetrated in allowing him to sit"). Allowing a racially biased person to sit on a jury provides "[n]o surer way ... to bring the processes of justice into disrepute." Maes, 180 Colo. at 176, 503 P.2d at 625 (quoting Aldridge, 283 U.S. at 315, 51 S.Ct. 470 ). Accordingly, courts must exercise the utmost care to ensure that verdicts are reached based on the facts of the case rather than racial bias. See generally Smith, 455 U.S. at 217, 102 S.Ct. 940 ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.").
¶ 111 Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), highlights the fundamental requirement of a jury that is free from racial bias and discrimination. There, the Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." Id. at 86, 106 S.Ct. 1712. In doing so, the Court noted its "unceasing efforts to eradicate racial discrimination" in jury selection. Id. at 85, 106 S.Ct. 1712.
*484 ¶ 112 The interest in ensuring an impartial jury has led federal and state courts to recognize that "rule[s] against juror impeachment cannot be applied so inflexibly as to bar juror testimony in those rare and grave cases where claims of racial or ethnic bias during jury deliberations implicate a defendant's right to due process and an impartial jury." Villar, 586 F.3d at 87 ; see also Wright v. United States, 559 F.Supp. 1139, 1151 (E.D.N.Y.1983) ("Certainly, if a criminal defendant could show that the jury was racially prejudiced, such evidence could not be ignored without trampling the Sixth Amendment's guarantee to a fair trial and an impartial jury."), aff'd, 732 F.2d 1048 (2d Cir.1984) ; Fisher v. State, 690 A.2d 917, 920 n. 4 (Del.1996) (the need to eradicate racial bias in juries outweighs the policy interests behind Delaware Rule of Evidence 606(b) ). The Supreme Court recognized early on that, "it would not be safe to lay down any inflexible rule [banning juror testimony] because there might be instances in which such testimony of the juror could not be excluded without 'violating the plainest principles of justice.' " McDonald v. Pless, 238 U.S. 264, 268-69, 35 S.Ct. 783, 59 L.Ed. 1300 (1915) (quoting Mattox v. United States, 146 U.S. 140, 148, 13 S.Ct. 50, 36 L.Ed. 917 (1892) ).
¶ 113 As the majority opinion notes, numerous state and federal courts have admitted evidence of racial bias, arising from jury deliberations, through multiple theories-both constitutional and rule-based. See, e.g., Villar, 586 F.3d at 84-88 (finding Fed.R.Evid. 606(b) unconstitutional as applied when it bars evidence of racial bias); United States v. Henley, 238 F.3d 1111, 1121 (9th Cir.2001) (finding persuasive those cases admitting evidence of racial juror bias, but deciding the case on other grounds); Tobias v. Smith, 468 F.Supp. 1287, 1290 (W.D.N.Y.1979) (admitting evidence under Rule 606(b)'s extraneous prejudicial influences exception); Fleshner v. Pepose Vision Institute, P.C., 304 S.W.3d 81, 89 (Mo.2010) (equal protection and the right to an impartial jury require admission of such evidence); State v. Hidanovic, 747 N.W.2d 463, 474-75 (N.D.2008) (the right to a fair trial and impartial jury would require Rule 606(b) to yield); Fisher, 690 A.2d at 920 n. 4 (same); see also Leah S.P. Rabin, Comment, The Public Injury of an Imperfect Trial: Fulfilling the Promises of Tanner and the Sixth Amendment Through Post-Verdict Inquiry into Truthfulness at Voir Dire, 14 U. Pa. J. Const. L. 537 (2011).
¶ 114 On appeal, the People rely on Tanner and United States v. Benally, 546 F.3d 1230 (10th Cir.2008).[4] However, I conclude that Tanner is distinguishable from cases involving issues of racial bias in juries. Therefore, I further conclude that Benally improperly relied on Tanner.
¶ 115 In Tanner, the defendant attempted to introduce juror testimony that during deliberations some jurors were intoxicated. Tanner, 483 U.S. at 116-17, 107 S.Ct. 2739. The Supreme Court held that the juror testimony was barred by Fed.R.Evid. 606(b), when used to impeach the jury's verdict. Id. at 122, 107 S.Ct. 2739. However, Tanner is distinguishable because it did not deal with racial bias and because the jurors' intoxication did not conclusively demonstrate that the jurors would be incapable of rendering an impartial and fair verdict. Id. at 126, 107 S.Ct. 2739. The Court noted that the "allegations of incompetence [were] meager," and "[t]he only allegations concerning the jurors' ability to properly consider the evidence were [the affiant's] observations that some jurors were 'falling asleep all the time during the trial,' and that his own reasoning ability was affected on one day of the trial." Id. (emphasis in original). Additionally, potential *485 incompetence because of intoxication is fundamentally different from racial prejudice-the latter being more insidious and less readily observable.
¶ 116 In contrast, here, according to the affidavit of another juror, Juror 11 said, "I think [Pena-Rodriguez] did it because he's Mexican, and Mexican men take whatever they want." This statement, if Juror 11 indeed made it, clearly demonstrates that, unlike the jurors in Tanner, Juror 11 did not fairly consider the evidence presented, and instead based his decision on Pena-Rodriguez's Hispanic background. Accordingly, Tanner is distinguishable.
¶ 117 Although Tanner is distinguishable, its rationale is helpful to analyze whether Pena-Rodriguez's Sixth Amendment right to an impartial jury outweighs the policy interests behind enforcing CRE 606(b). In Tanner, the Supreme Court balanced the defendant's Sixth Amendment right to an unimpaired jury[5] against the policy interests in excluding juror testimony. 483 U.S. at 126-28, 107 S.Ct. 2739. The Court noted that the policy interests include promoting the finality of judgments, "full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople." Id. at 120-21, 107 S.Ct. 2739. In contrast, the Court concluded that four factors protect a defendant's Sixth Amendment right to an unimpaired jury: (1) the ability of the court and counsel to observe jurors during trial, (2) the ability of jurors to be questioned during voir dire, (3) the ability of jurors to report misconduct before a verdict is rendered, and the (4) ability of nonjurors to report juror misconduct. Id. at 127, 107 S.Ct. 2739. Thus, the Court concluded that the defendant's Sixth Amendment right to an unimpaired jury must yield to the policy interests behind insulating deliberations. Id.
¶ 118 Here, however, the four Tanner factors do not provide adequate safeguards in the context of a juror motivated by racial bias. See Villar, 586 F.3d at 87. First, racial bias, unlike intoxication, is not a visible characteristic observable by the court or counsel. See id.
¶ 119 Second, the majority suggests that the Sixth Amendment does not require Rule 606(b) to yield because there is "no reason to conclude that diligent voir dire would have left [defendant's] rights to a jury free of racial bias unprotected." However, Justices of the Supreme Court have recognized that the protections provided by voir dire are insufficient to protect against racial bias, because jurors may be reluctant to admit their bigotry in open court. See, e.g., McDonough, 464 U.S. at 558, 104 S.Ct. 845 (Brennan, J., concurring) ("the bias of a juror will rarely be admitted by the juror himself, 'partly because the juror may have an interest' in concealing his own bias and partly because the juror may be unaware of it" (quoting Smith, 455 U.S. at 221-22, 102 S.Ct. 940 (O'Connor, J., concurring))); see also Villar, 586 F.3d at 87 & n. 5. Accordingly, voir dire is an insufficient protection against racial bias.
¶ 120 Third, it is unlikely that jurors will report juror misconduct prior to the verdict, because they are usually instructed by the court not to communicate with anyone outside the jury. Here, the court orally instructed the jury, "[D]uring [deliberations] you will not be able to communicate with anyone." The court also referred to the "confidential" nature of deliberations, and repeated that the jurors were not allowed to talk to anyone besides other jurors. Similar instructions were given in the adjournment instructions, which every juror read and signed. The adjournment instructions additionally emphasized that the jurors could not contact any attorney, witness, or party. Accordingly, it is possible that the jurors believed that they could not bring Juror 11's statements to the court's attention until after deliberations ended.
¶ 121 Fourth, nonjurors are not privy to deliberations, and thus would be unable to report racially biased statements made during jury deliberations. See *486 Villar, 586 F.3d at 87 ; cf. United States v. Provenzano, 620 F.2d 985, 996-97 (3d Cir.1980) (court considered statement from U.S. Marshal who saw jury members smoking marijuana outside the jury room).
¶ 122 Thus, the Tanner procedural protections are insufficient safeguards against racial prejudice. Accordingly, I conclude that the policy considerations behind CRE 606(b) do not outweigh a defendant's Sixth Amendment right to a fair trial.[6]
¶ 123 Contrary to the majority's conclusion, I do not believe that finding CRE 606(b) unconstitutional as applied in this case would open a Pandora's box to charges of racially biased jurors participating in jury deliberations. There are no published cases in Colorado involving evidence of racial bias arising during deliberations which is first discovered after a verdict. Thus, it does not appear to be a common occurrence. Additionally, my view here is limited to allegations of juror bias against distinct racial groups.[7] See generally Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (expanding the Batson analysis from discrimination against African-American jurors to Hispanic jurors); Washington v. People, 186 P.3d 594, 601 (Colo.2008) ("African-Americans and Hispanics are 'distinctive groups' for the purposes of a fair cross-section analysis." (quoting United States v. Weaver, 267 F.3d 231, 240 (3d Cir.2001) )).
IV. Remedy
¶ 124 Having concluded the trial court erred, I would remand for an evidentiary hearing to determine whether Pena-Rodriguez was prejudiced by Juror 11's apparent racial bias. See Villar, 586 F.3d at 87-88 (the trial court is best positioned to determine whether a defendant is prejudiced by racial bias during deliberations).
¶ 125 I would direct the trial court on remand to conduct an evidentiary hearing to determine, at the very least, (1) whether Juror 11 made the statements of apparent racial bias attributed to him in the two affidavits; (2) whether Juror 11 based his decision of guilt on racial bias rather than the facts presented, (3) whether Juror 11's statements affected the views of other jurors, and (4) whether any other juror expressed racial bias. I would defer to the trial court to determine the best procedure for making such a determination. Id. However, I recognize that the passage of time may cause difficulty in securing further juror testimony. Accordingly, it would be within the trial court's discretion to base its determination on juror testimony, the affidavits already in the record, or some combination of both.[8]
V. Juror Contact Information
¶ 126 Having decided that I would remand the case for further proceedings, I need not determine whether a defendant has a right to unfettered access to juror information following trial. However, under the plain wording of Crim. P. 24(a)(4), juror contact information in this case would be "appropriate and necessary." Thus, without deciding the issue of whether an unfettered right to jury information exists, I would order the trial court to provide juror contact information to both parties to facilitate a complete investigation into potential bias. The trial court could limit defense counsel's contacts with jurors to the issue of racial bias.
¶ 127 Finally, providing such information in this case would not result in a "fishing expedition," because two juror affidavits already *487 establish the possibility of a biased verdict.
¶ 128 Accordingly, I respectfully dissent.

I recognize that courts have referred to people of Hispanic heritage as belonging to racial, ethnic, and national origin groups. See, e.g., Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 504, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986) (Hispanic firefighters alleged they had been discriminated against by reason of their race and national origin); United States v. Villar, 586 F.3d 76, 84 (1st Cir.2009) (discussing jury discrimination against a Hispanic defendant as racial and ethnic bias); People v. Mendoza, 876 P.2d 98, 101 (Colo.App.1994) (prima facie evidence of racial discrimination existed where the prosecution used five peremptory challenges to eliminate Hispanic jurors). However, because people of Hispanic heritage belong to a distinct racial group, I limit my discussion to racial prejudice. Mendoza, 876 P.2d at 101.

The majority opinion cites this authority, and others, to support its conclusion that Pena-Rodriguez should have asked questions specifically addressing racial bias. However, this authority notes that open-ended questions are better for detecting racial and other biases. Thus, this observation conflicts with the majority's assertion that specific questioning regarding bias was required to preserve Pena-Rodriguez's constitutional challenge.

I do not disagree with the majority's discussion of the general application and function of CRE 606(b) in section III.B. of the majority opinion. However, because I conclude that the Sixth Amendment requires consideration of racial bias arising during jury deliberations, I do not need to decide whether evidence of bias would also be admissible under the exceptions contained in CRE 606(b)(1) and (2). I would note, however, that federal and state courts have allowed consideration of such evidence under these exceptions, in rules identical to CRE 606. See Tobias v. Smith, 468 F.Supp. 1287, 1290 (W.D.N.Y.1979) ; State v. Bowles, 530 N.W.2d 521, 536 (Minn.1995).

Benally, in turn, relied on Williams v. Price, 343 F.3d 223, 235-37 (3d Cir.2003). Benally, 546 F.3d at 1236. There, the Third Circuit held that "state courts did not violate 'clearly established Federal law' in refusing to consider" statements regarding racial bias made during jury deliberations. Williams, 343 F.3d at 236. However, the court's analysis was limited to habeas corpus review. Id. at 228-29. Accordingly, judges and commentators have criticized Benally 's reliance on Williams in applying the holding to a direct appeal. See, e.g., United States v. Benally, 560 F.3d 1151, 1154 (10th Cir.2009) (Briscoe, J., dissenting), denying reh'g en banc 546 F.3d 1230 ; Rabin, 14 U. Pa. J. Const. L. at 547-48 ; Brandon C. Pond, Note, Juror Testimony of Racial Bias in Jury Deliberations: United States v. Benally and the Obstacle of Federal Rule of Evidence 606(b), 2010 BYU L.Rev. 237, 246-47.

The Court's discussion in Tanner was limited to whether the defendant's right to an unimpaired jury allowed consideration of the juror testimony. Tanner, 483 U.S. at 126, 107 S.Ct. 2739.

For these same reasons, I conclude that Benally was decided improperly, and therefore I decline to rely on it.

For purposes of my dissent, I need not address whether the Sixth Amendment right to an impartial jury should trump CRE 606(b) in cases of alleged discrimination by jurors on the basis of gender, religion, sexual orientation, or immigration status.

While I would not order a specific procedure for the trial court to follow on remand, I would note that Commonwealth v. McCowen, 458 Mass. 461, 939 N.E.2d 735, 765-66 (2010), provides a detailed example of one method of assessing juror bias.